PEOPLE v SHAFOU

Docket No. 62885. Argued January 10, 1980 (Calendar No. 12).—
Decided December 23, 1982. Rehearing denied 417 Mich 1113.

Khalid P. Shafou was convicted by a jury in the Recorder's Court
of Detroit, Verne C. Boewe, J., of inciting another person to
commit arson. The trial court refused requests by the defen-
dant to instruct the jury on attempt and the defense of with-
drawal, and instructed the jury that it is unnecessary to find
that any overt act took place in furtherance of the crime
incited. The Court of Appeals, Beasley, P.J., and Bronson, J.
(N. J. Kaufman, J., dissenting), reversed in an unpublished
opinion per curiam, holding that an overt act is not an element
of the crime of inciting, but that the trial court erred in
refusing to instruct the jury that withdrawal is a defense to the
charge (Docket No. 77-2695). The people appeal.

The judgment of the Court of Appeals is affirmed by an
equally divided Court.

Chief Justice Fitzgerald, joined by Justices Williams and
Coleman, would reverse the judgment of the Court of Appeals
and reinstate the defendant's conviction.

1. No overt act by anyone other than the defendant is
necessary to convict under the statute. The terms "incite,
induce, or exhort" used by the statute are essentially synony-
mous and refer to conduct of the defendant intended to bring
about action on the part of another person. It is the inciting,
inducing, or exhorting which constitutes the culpable conduct.
The Legislature did not intend that conviction of a crime under
the statute would depend on the incidental result of a third

REFERENCES FOR POINTS IN HEADNOTES

[1-17] 21 Am Jur 2d, Criminal Law § 159.
Criminal responsibility under 18 USCS § 2(b) of one who lacks
capacity to commit an offense but who causes another to do so. 52
ALR Fed 769.
[5, 13-17] 5 Am Jur 2d, Arson and Related Offenses §§ 15, 26.
[7] 16A Am Jur 2d, Constitutional Law §§ 460-463.
[10] 21 Am Jur 2d, Criminal Law § 158.
[11, 12] 54 Am Jur 2d, Mobs and Riots §§ 4, 20.
[15, 16] 75 Am Jur 2d, Trial §§ 877, 881, 882.

party's conduct, that is, an overt act or proof of actual incitement.

2. The defendant in this case sought to have his competitor's store burned; when he successfully contacted the proposed arsonist for the purpose of inducing his participation, the statutory crime was complete.

3. To punish someone for attempting to incite, induce, or exhort a statutorily specified offense would be, perhaps, to punish unexpressed thoughts or otherwise non-culpable conduct, and is not what the Legislature intended. Such a crime lacks the required element of imminence to be constitutionally permissible.

4. Withdrawal is not a defense. Completion of the statutory crime signifies the point at which control over the criminal act urged and intended effectively passes to a third party. The fortuitous circumstance of a third party's inaction, as here, does not render the inciting, inducing, or exhorting less dangerous. Thus, a defense of withdrawal would be inconsistent with the legislative determination of the conduct to be punished.

Justice Levin, joined by Justice Ryan, would hold that the statute does not subject a person to criminal responsibility for utterances which do not cause an offense to be committed. A person who does no more than utter words urging commission of an offense is subject to liability only for solicitation, except where the urgings are with the intent of instituting or maintaining a riot, in which case a companion statute applies. They would affirm the judgment of the Court of Appeals.

1. The statute uses the words "incite", "induce", and "exhort". To read them as meaning "to urge" would be to deny a separate meaning to "induce" and to make "incite" superfluous, while to read them as meaning "to move to action" would be to deny a separate meaning to the word "exhort" and again to make "incite" superfluous. Confronted by such an ambiguity inherent in a statute, courts generally look for the legislative intent or purpose, and ask which construction appears most reasonable in all the circumstances.

2. Construction of the statute as a solicitation statute would have the result that the penalty is greater than that imposed for solicitation before its enactment or that imposed in other states. This suggests that the rule of lenity should be invoked and that it should not be construed as a solicitation statute.

3. The statute is, rather, a special kind of accomplice statute. It was enacted after the experience of the civil disturbances in Detroit in 1967 so that a person who incited, induced, or

exhorted other persons to actually commit a life-endangering offense would be subject to criminal responsibility as an accomplice, and subject to the same penalty as the person who committed the offense without regard to whether there was any further concert of action between the speaker and the person who committed the offense. The word "exhort" was added to make clear that the kind of cause and effect relationship generally required for accomplice liability was not required in the civil disturbance or riot situation. A general incitement, inducement, or exhortation which, in fact, resulted in the commission of life-endangering offenses would subject the offender to the severe penalties of the statute.

Justice Kavanagh would hold that proof of an overt act by the person incited is required to convict the defendant under the statute, and that refusal to give an instruction to the jury on attempt was reversible error.

1. The opinion for reversal treats the statute as a codification of the common-law crime of solicitation. However, the statute was enacted in 1968, apparently in response to the 1967 Detroit riots, and was added to the conspiracy chapter of the penal code, which indicates that the Legislature intended that some interaction among persons would be necessary for conviction under the statute. On the same day, and apparently in response to the same social problem, the Legislature enacted, in the supplemental chapter on rioting and related crimes, a statute prohibiting incitement to riot which does not require that another person actually be incited before a crime is committed. It is apparent from the language of the two statutes that the Legislature intended to prohibit different activity under them.

2. It is the incitement to burn illegally, rather than the effort to incite, which is the gravamen of the statutory crime in this case. Accordingly, some overt act resulting in actual incitement of another person must be proved by direct evidence or reasonable inference from circumstantial evidence to establish this crime. The overt act which must be proved need not be the commission of the crime sought to be incited.

3. In this case, the person whom the defendant sought to incite was a police informant who never intended to burn the market. Therefore, there is no proof of actual incitement. At most, the defendant is guilty of an attempt to incite another person to commit arson. The trial court erred in refusing to charge the jury on attempt. A fair reading of the record discloses that a request for an instruction on attempt was made by defense counsel. Even if one accepts the statute as not

requiring proof of an overt act, the defendant was entitled to an instruction on attempt as a cognate included offense.

4. The defense of withdrawal is of no avail to the defendant because it is not a defense to a charge of a completed crime. Once the defendant attempted to solicit the police informant, the crime of attempt was complete. There is no need, therefore, to reach the broad issue whether withdrawal can ever be a defense. The record establishes only an attempt to incite. The defendant should stand convicted of that crime, and the matter be remanded to the trial court for resentencing.

OPINION BY FITZGERALD, C.J.

1. CRIMINAL LAW — INCITEMENT — ELEMENTS OF CRIME — OVERT ACT.

*No overt act by anyone other than the defendant is necessary to convict under the statute which prohibits inciting, inducing, or exhorting another to commit certain crimes (MCL 750.157b; MSA 28.354[2]).*

2. CRIMINAL LAW — INCITEMENT — ELEMENTS OF CRIME — STATUTES.

*The terms used by the statute which prohibits inciting another person to commit a crime, "incite, induce or exhort", are essentially synonymous and refer to conduct by the defendant intended to bring about action on the part of another person (MCL 750.157b; MSA 28.354[2]).*

3. CRIMINAL LAW — INCITEMENT — ELEMENTS OF CRIME — OVERT ACT.

*The purpose of the statute which prohibits inciting another person to commit a crime is to punish persons who incite, induce, or exhort dangerous conduct, and conviction does not depend on the incidental result of a third party's conduct, that is, an overt act or proof of actual incitement (MCL 750.157b; MSA 28.354[2]).*

4. CRIMINAL LAW — INCITEMENT — ELEMENTS OF CRIME — STATUTES.

*Incitement of crime under the statute is conduct by which a person urges another to commit a specified crime with the intent that such a crime result; it is the use of words in that particular manner which constitutes the criminal offense (MCL 750.157b; MSA 28.354[2]).*

5. ARSON — INCITEMENT — ELEMENTS OF CRIME — STATUTES.

*The statutory crime of inciting another person to commit arson was complete where the defendant successfully contacted the*

*alleged arsonist for the purpose of inducing his participation in burning a competitor's store (MCL 750.157b; MSA 28.354[2]).*

6. CRIMINAL LAW — INCITEMENT — ATTEMPT — CONSTITUTIONAL LAW — STATUTES.

*The statute prohibiting incitement to commit a crime, as drawn, meets constitutional requirements, but an attempt to commit the statutory crime would not (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).*

7. CRIMINAL LAW — INCITEMENT — ATTEMPT — CONSTITUTIONAL LAW — STATUTES.

*It was not the goal of the Legislature to punish the attempt to commit the statutory crime of incitement of dangerous conduct; that legislative approach is consistent with constitutional considerations of overbreadth (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).*

8. CRIMINAL LAW — INCITEMENT — ATTEMPT — CONSTITUTIONAL LAW — STATUTES.

*To punish someone for attempting to incite, induce, or exhort a statutorily specified offense would be, perhaps, to punish unexpressed thoughts or otherwise non-culpable conduct; such a crime lacks the required element of imminence to be constitutionally permissible (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).*

9. CRIMINAL LAW — INCITEMENT — DEFENSES — WITHDRAWAL.

*Completion of the statutory crime of incitement to commit a crime signifies the point at which control over the criminal act urged and intended effectively passes to a third party, and the fortuitous circumstance of a third party's inaction does not render the incitement less dangerous (MCL 750.157b; MSA 28.354[2]).*

10. CRIMINAL LAW — INCITEMENT — DEFENSES — WITHDRAWAL.

*Withdrawal is not a defense to the charge of inciting another person to commit a crime because that defense would be inconsistent with the legislative determination of the conduct to be punished, inciting, inducing, or exhorting life-threatening crimes (MCL 750.157b; MSA 28.354[2]).*

OPINION BY LEVIN, J.

11. CRIMINAL LAW — INCITEMENT — SOLICITATION.

*A person who does no more than utter words urging the commission of an offense is liable only for solicitation unless the*

urgings are intended to institute or maintain a riot (MCL 750.157b; MSA 28.354[2]).

12. CRIMINAL LAW — INCITEMENT — CIVIL DISTURBANCE — SOLICITATION.

The Legislature intended that a person who during a civil disturbance or a riot incited, induced, or exhorted other persons actually to commit a life-endangering offense would be subject to criminal responsibility as an accomplice and would be subject to the same penalty as the person who committed the offense without regard to whether there was any further concert of action between them; the penalties were not intended to apply to persons who merely urged or solicited others to commit a crime (MCL 750.157b; MSA 28.354[2]).

OPINION BY KAVANAGH, J.

13. ARSON — INCITEMENT — ELEMENTS OF CRIME — STATUTES.

It is the incitement to burn illegally, rather than the effort to incite, which is the gravamen of the statutory crime of inciting another person to commit arson; accordingly, some overt act resulting in actual incitement of the other person must be proved to establish the crime (MCL 750.157b; MSA 28.354[2]).

14. ARSON — INCITEMENT — ATTEMPT.

There is no proof of actual incitement of another person to commit arson and, at most, the defendant is guilty of an attempt to incite arson where the person whom the defendant sought to incite was a police informant who never intended to commit the arson (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).

15. ARSON — INCITEMENT — ATTEMPT — INSTRUCTIONS TO JURY.

A defendant charged with inciting another person to commit arson was entitled to an instruction on attempt as a cognate included offense where a fair reading of the record shows that he requested an instruction on attempt (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).

16. ARSON — INCITEMENT — ATTEMPT — INSTRUCTIONS TO JURY.

Refusal to instruct the jury on attempt even where the evidence showed a completed offense of inciting another person to commit arson was error, because attempt is a cognate included offense (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).

17. ARSON — INCITEMENT — DEFENSES — WITHDRAWAL.

The defense of withdrawal is of no avail to a defendant who at-

*tempted to solicit a police informant to commit arson because it is not a defense to a charge of a completed crime (MCL 750.92, 750.157b; MSA 28.287, 28.354[2]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Parzen & Parzen (Edward Grebs,* of counsel) for the defendant.

FITZGERALD, C.J. Defendant was convicted by a jury of inciting, inducing, or exhorting another person to unlawfully burn property in violation of MCL 750.157b; MSA 28.354(2). The Court of Appeals reversed defendant's conviction in an unpublished per curiam opinion, Judge KAUFMAN dissenting. We reverse the judgment of the Court of Appeals and reinstate defendant's conviction.

I

Defendant owned and operated a store in the City of Detroit. Defendant contacted an alleged arsonist and arranged to burn down a competitor's market which was located across the street from defendant's place of business. Unknown to defendant, the alleged arsonist was a police informant. Several telephone conversations between defendant and the informant were taped by police officers. Transcripts of these conversations were introduced at trial and admitted into evidence. This evidence showed that the defendant agreed to pay $1,000 for destruction of the building.

The day before the fire was to occur, defendant directed his brother to telephone the informant

and tell him to "forget everything about the store". Defendant's brother contacted the informant as instructed. The informant agreed not to burn the store.

At trial, defendant's counsel requested an instruction that withdrawal constituted a defense to the crime charged. The court denied this request and instructed the jury as follows:

"Ladies and gentlemen of the jury, it is important that you keep in mind that the crime of inciting to burn real property is complete at the time the inciting, inducing or exhorting takes place. In other words, it is *unnecessary that any overt act be done* in furtherance of that which is incited, induced or exhorted. For example, in this case it is unnecessary to find that the market was actually ever burned or that any person or persons did any act as a result of the defendant's incitement, if any incitement actually occurred. * * * If *you find that such an incitement, inducement or exhortation to burn had been made, [that] there had been a withdrawal is of no consequence, it's not a defense of the act."* (Emphasis supplied.)

The jury convicted defendant of the crime charged.

The Court of Appeals held that no overt act by the informant need be proved for conviction of inciting, inducing, or exhorting the burning of real property. However, the Court reversed defendant's conviction on the ground that the trial court erred in refusing to instruct the jury that withdrawal was a defense.

We granted leave to appeal and cross-appeal to resolve three questions: Does MCL 750.157b; MSA 28.354(2) require proof of an overt act and that the third party was incited? Was it reversible error for the trial court to refuse to charge on attempt? Is withdrawal or abandonment a defense to the

charge of inducing, inciting, or exhorting another to unlawfully burn property under MCL 750.157b; MSA 28.354(2)? 406 Mich 1012 (1979). We answer these questions in the negative.

## II

Defendant argues that proof of an overt act by the person sought to be incited is a necessary element of the crime of inciting, inducing, or exhorting the burning of real property. It is our determination that no overt act by anyone other than the defendant is necessary to convict under this statute.

MCL 750.157b; MSA 28.354(2) provides:

"Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense incited, induced or exhorted."

The Court of Appeals, in upholding the constitutionality of MCL 750.157b; MSA 28.354(2), wrote:

"The three terms used in the statute to describe the prohibited conduct are given similar definitions by *Webster's New World Dictionary* (2d ed) (Collins & World Publishing Co, Inc, 1974).[1] A fair reading of the definitions is that the terms 'incite, induce or exhort' are essentially synonymous, and refer to conduct intended to bring about action on the part of another person. *Cf. People v O'Neal,* 22 Mich App 432; 177 NW2d 636 (1970).

"We think that the statute as written sufficiently

informs a potential defendant that he is to refrain from conduct calculated to cause another person to commit an offense described in the statute. MCL 750.157b; MSA 28.354(2) is not unconstitutionally vague." *People v Chapman,* 80 Mich App 583, 586; 264 NW2d 69 (1978).

---

"¹ Incite: 'to urge to action; stir up; rouse' (p 710). Induce: 'to lead on to some action * * *; prevail on; persuade' (p 718). Exhort: 'to urge earnestly by advice, warning, etc.' (p 491)."

---

This language speaks only to the conduct of the defendant. We agree with this focus.

It is the defendant's inciting, inducing, or exhorting which constitutes the culpable conduct. We do not think the Legislature intended that conviction of a crime under this statute would depend on the incidental result of a third party's conduct, that is, an overt act or proof of actual incitement.

This accords with the interpretation articulated in *People v Plyler,* 104 Mich App 437; 304 NW2d 859 (1981), a factually dissimilar case in which the "overt act" argument was also raised. In holding that no overt act need be established for conviction under this same statute, the Court noted that the purpose of the statute is to punish persons who incite, induce, or exhort dangerous conduct. The Court affirmed defendant's conviction of inciting second-degree murder without proof of an overt act by a third party or proof of actual incitement.

A criminal incitement under the statute is conduct by which a person urges another to commit a specified crime with the intent that such a crime result. It is the use of words in this particular manner which constitutes the criminal offense. Defendant, here, sought to have his competitor's store burned. At the point where the defendant successfully contacted the alleged arsonist for the

purpose of inducing his participation, the statutory crime was complete.

## III

Defendant argues that it was reversible error for the trial court to refuse to instruct on attempted inciting, inducing, or exhorting to burn real property. We conclude otherwise.

The statute, as drawn, meets constitutional requirements; an attempt to commit the statutory crime would not. We feel it was the Legislature's goal to punish inciting, inducing, or exhorting dangerous conduct and not the attempt to commit this statutory crime. This legislative approach is consistent with constitutional considerations of overbreadth. To punish someone for attempting to incite, induce, or exhort a statutorily specified offense would be, perhaps, to punish unexpressed thoughts or otherwise non-culpable conduct. We do not believe that this is what the Legislature intended. Such a crime lacks the required element of imminence to be constitutionally permissible. *People v Chapman, supra.*

## IV

The people contend that the trial court correctly ruled that withdrawal is not a defense to the charge of inciting, inducing, or exhorting to burn real property and that the Court of Appeals erred in reversing defendant's conviction on this ground. We agree.

Enactment of MCL 750.157b; MSA 28.354(2) bespeaks the Legislature's appreciation of the danger to society posed by inciting, inducing, or exhorting

life-threatening crimes. In addition, completion of the statutory crime signifies the point at which control over the criminal act urged and intended effectively passes to a third party. The fortuitous circumstance of a third party's inaction, as here, does not render the inciting, inducing, or exhorting less dangerous. Thus, a defense of withdrawal would be inconsistent with the legislative determination of the conduct to be punished.

The decision of the Court of Appeals is reversed and the defendant's conviction is reinstated.

WILLIAMS and COLEMAN, JJ., concurred with FITZGERALD, C.J.

LEVIN, J. Shafou solicited a police informant to burn a competitor's store. On the day before the fire was to occur, Shafou's brother telephoned the police informant and told him not to burn the store.

Shafou was charged with and convicted of inciting, inducing, or exhorting the police informant to unlawfully burn in violation of § 157b of the Penal Code,[1] added in 1968 after the civil disturbances in Detroit in 1967.

---

[1] See text accompanying fn 15 for text of § 157b.

Shafou could not be charged with conspiracy to burn a building (MCL 750.73; MSA 28.268) because one cannot enter into an unlawful agreement with a police informant who does not intend to commit an offense. *People v Smyers*, 398 Mich 635, 640, 651; 248 NW2d 156 (1976). On the assumption that a similar limitation does not inhere in § 157b, Shafou was charged with and convicted of inciting, inducing, or exhorting the police informant to unlawfully burn.

Charging a violation of § 157b exposes the defendant to the same punishment imposed on an accomplice or conspirator.

Shafou was sentenced to five years probation, the first six months to be served in the Detroit House of Correction, and fined $1,000. The evidence tended to show that Shafou was guilty of solicitation, a common-law, not a statutory, offense for which the same term of imprisonment and fine could have been imposed:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by

We were prompted to grant leave to appeal by the decision of the Court of Appeals reversing Shafou's conviction on the ground that withdrawal was a defense.

The lead opinion would reverse the judgment of the Court of Appeals on the withdrawal issue and reinstate Shafou's conviction. That opinion agrees with the Court of Appeals in rejecting Shafou's argument that "proof of an overt act by the person sought to be incited is a necessary element".[2] It would further hold that "actual incitement" need not be shown:

"A criminal incitement under the statute is conduct by which a person urges another to commit a specified crime with the intent that such a crime result. It is the use of words in this particular manner which constitutes the criminal offense. Defendant, here, sought to have his competitor's store burned. At the point where the defendant successfully contacted the alleged arsonist for the purpose of inducing his participation, the statutory crime was complete."[3]

Justice KAVANAGH would hold that "actual incitement" is required; while the person solicited need not commit the solicited offense, there must be "some overt act resulting in actual incitement of the other person".[4] Since, in the instant case, the police informant was not actually incited, Shafou is guilty of attempted inciting, inducing, or

imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court." MCL 750.505; MSA 28.773.

Burning a building other than a dwelling house subjects the offender to 10 years imprisonment. MCL 750.73; MSA 28.268.

[2] *Ante*, p 121.

[3] *Ante*, p 122.

[4] "I would hold that it is the incitement to burn illegally rather than the effort to incite which is the gravamen of the crime prohibited by the statute under which the defendant was convicted. Accordingly, some overt act resulting in actual incitement of the other person must be proved by direct evidence or reasonable inference

exhorting, and the judge erred in refusing to charge on attempt.[5]

We would hold that § 157b does not subject a person to criminal responsibility for utterances which do not cause an offense to be committed. A person who does no more than utter words urging commission of an offense is subject to liability, as before, only for solicitation except where the urgings are with the intent of instituting or maintaining a riot in which case a companion statute, also enacted in 1968, is applicable.[6]

I

The lead opinion quotes from the per curiam opinion of the Court of Appeals in the instant case which sets forth definitions of the words "incite", "induce", and "exhort".[7]

It appears that while "incite" is sometimes used in the same sense as "exhort", *i.e.,* to urge, it is also used in the same sense as "induce", an utterance which actually moves the listener to act.[8]

from circumstantial evidence to establish this crime. The overt act which must be proved to establish this crime need not be the commission of the crime sought to be incited. But until it is proved that the other person *was* incited this statutory crime has not been committed, however vigorous the attempt to incite may have been. Once the incitement has been demonstrated the crime is complete." (Emphasis in original.) *Post,* p 149.

[5] Justice KAVANAGH would hold that withdrawal is not a defense to attempt to incite and would not reach the question whether withdrawal can be a defense to an alleged violation of § 157b. *Post,* p 152.

[6] See fn 14.

[7] The opinion sets forth *Webster's New World Dictionary* (2d ed), (Collins & World Publishing Co, Inc, 1974), definitions of "incite", "induce", and "exhort":

"Incite: 'to urge to action; stir up; rouse' (p 710). Induce: 'to lead on to some action * * *; prevail on; persuade' (p 718). Exhort: 'to urge earnestly by advice, warning, etc.' (p 491)."

[8] The Merriam-Webster dictionary *(Webster's New Collegiate Dictionary;* Springfield, Mass.: G & C Merriam Co, 1975), definition of "incite" is:

"To move to action; stir up; spur on; urge on".

To read the three words "incite", "induce", and "exhort", as meaning "to urge" would be to deny a separate meaning to the word "induce" and to make "incite" superfluous, while to read the three words as meaning "to move to action" would be to deny a separate meaning to the word "exhort"[9] and, again, to make the word "incite" superfluous.[10] Confronted with three words: "incite", which means both to urge on and to move to action—the lead opinion speaks of "actual incitement"—and "induce", which requires a cause and effect relationship (to move to action), and "exhort" (to urge or admonish, without any cause and effect relationship), an appellate court asks what the Legislature intended. Did it intend that persons be subject to liability for simply uttering words or that the listener be persuaded? And, if persuasion is required, is it further necessary that the listener in fact act in the manner requested?

We acknowledge that to require a cause and

---

*The Random House Dictionary of the English Language* (New York: Random House, 1969) states:

"To urge on; stimulate or prompt to action; to incite a crowd to riot."

Merriam-Webster defines "induce" as:

"To lead on; move by persuasion or influence; to call forth or bring about by influence or stimulation; effect, cause; to cause the formation of; to produce (as an electric current) by induction; to arouse by indirect stimulation".

Random House defines it as:

"To lead or move by persuasion or influence, as to some action, state of mind, etc.: to induce a person to go; to bring about, produce, or cause: Opium induces sleep."

[9] Merriam-Webster defines "exhort" as:

"To incite by argument or advice: urge strongly; to give warnings or advice: make urgent appeals."

Random House defines "exhort" as:

"To urge, advise, or caution earnestly; admonish urgently; to make exhortation; give admonition."

[10] Indeed, one may wonder why if the construction of the lead opinion is correct the Legislature did not simply use the word urge as it did in the companion riot statute. See fn 14.

effect relationship is arguably to read "exhort" out of the statute. It will not do, however, to say that each word must be given meaning and that the three words are stated in the disjunctive. That argument cuts both ways. The construction of § 157b set forth in the lead opinion, that it is enough that the defendant urged without regard to whether the listener was persuaded or, following persuasion, acted, denies a separate meaning to "induce" and, again, also makes superfluous the separate meanings of "incite", to "stir up; rouse", "to move to action", to "stimulate or prompt to action".

Confronted with a statute in which such an ambiguity inheres, courts generally look for the legislative intent or purpose, and ask which construction appears most reasonable in all the circumstances.

The primary rule of construction is to give effect to the legislative intent. To do so, courts will construe "or" as meaning "and" and "and" as meaning "or".[11] Moreover, "penal statutes are to be strictly construed and any ambiguity is to be resolved in favor of lenity". *People v Gilbert,* 414 Mich 191, 211; 324 NW2d 834 (1982).

---

[11] "Whenever it is reasonably necessary to accomplish the obvious purpose of a statute the word 'and' may be read not only in the conjunctive but also in the disjunctive. Such has been the construction given by this court even to statutes constituting a part of our criminal law. See *People v Harrison,* 194 Mich 363; 160 NW 623 (1916).

" 'In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe "or" as meaning "and", and again "and" as meaning "or".' *United States v Fisk,* 3 Wall (70 US) 445; 18 L Ed 243 (1866)." *Elliott Grocer Co v Food Market, Inc,* 286 Mich 112, 115-116; 281 NW 557 (1938).

"[C]ourts have generally said that the words are interchangeable and that one may be substituted for the other, if to do so is consistent with the legislative intent." 1A Sands, Sutherland Statutory Construction (4th ed), § 21.14, p 91.

The prosecutor has claimed that § 157b is a solicitation statute. The lead opinion by its construction agrees, although it draws back from so characterizing it in those words, possibly because the penalties provided are greater than for solicitation in any other state of the union. The enormous potential disparity between the penalties provided by § 157b and those in Michigan before the enactment of this statute and in other states strongly suggests that the rule of lenity should be invoked and that § 157b should not be construed to be a solicitation statute.

The 1967 civil disturbance in Detroit prompted a review of the adequacy of the Penal Code provisions concerning riots and unlawful assemblies.[12] Existing legislation did little more than impose obligations on officials to disperse unlawful assemblies and on the citizenry to disperse. Although part of the Penal Code, the legislation did not establish separate criminal penalties for unlawful assembly or rioting as such.[13]

In 1968, existing legislation was repealed, and rioting and incitement to riot were made punishable by not more than ten years in prison. Unlawful assembly was made punishable by not more than five years.[14]

---

[12] MCL 750.521-750.528; MSA 28.789-28.796.

[13] Section 528 did provide that persons so unlawfully assembled who had destroyed or injured a dwelling or other building or ship shall be guilty of a felony and answerable for damages. MCL 750.528; MSA 28.796.

Officers who neglected their duty were guilty of a misdemeanor. MCL 750.524; MSA 28.792.

If officials or persons acting by their order were killed or wounded "all the persons so unlawfully, riotously or tumultuously assembled, and all other persons who, when commanded or required, shall have refused to aid or assist the said magistrates or officers, shall be held answerable therefor". MCL 750.527; MSA 28.795.

[14] "Sec. 1. It is unlawful and constitutes the crime of riot for 5 or more persons, acting in concert, to wrongfully engage in violent

It was in this context that the Legislature added § 157b:

"Any person who *incites, induces* or *exhorts* any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted".[15] (Emphasis supplied.)

If not a solicitation statute, what then is it? It is, we believe, a special kind of accomplice statute. Under prior Michigan law, accomplices are and continue to be punishable in the same way as those who commit the offense.[16] Why then did the

conduct and thereby intentionally or recklessly cause or create a serious risk of causing public terror or alarm." MCL 752.541; MSA 28.790(1).

"Sec. 2. It is unlawful and constitutes incitement to riot for a person or persons, intending to cause or to aid or abet the institution or maintenance of a riot, to do an act or engage in conduct that urges other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer, peace officer, fireman or a member of the Michigan national guard or any unit of the armed services officially assigned to riot duty in the lawful performance of his duty." MCL 752.542; MSA 28.790(2).

"Sec. 3. It is unlawful and constitutes an unlawful assembly for a person to assemble or act in concert with 4 or more persons for the purpose of engaging in conduct constituting the crime of riot, or to be present at an assembly that either has or develops such a purpose and to remain thereat with intent to advance such purpose." MCL 752.543; MSA 28.790(3).

"Sec. 4. (1) A violation of sections 1 or 2 is a felony, punishable by not more than 10 years in prison or a fine of not more than $10,000.00, or both.

"(2) A violation of section 3 is a felony, punishable by not more than 5 years in prison or a fine of not more than $5,000.00, or both." MCL 752.544; MSA 28.790(4).

[15] MCL 750.157b; MSA 28.354(2).

[16] Michigan has a general accomplice statute, MCL 767.39; MSA

Legislature need to amend the statute? The answer to that question may explain why the Legislature did not stop at "incite" and "induce" and added "exhort".

After the civil disturbance, the Wayne County Prosecutor had the task of prosecuting persons who had been active in fomenting the civil disturbance. He may have concluded or found that he would not be able to successfully prosecute as accomplices persons who shouted "burn, baby, burn" or "kill whitey" or "kill the blacks" because of the generality of the speech. Arguably the message was too general to impose accomplice responsibility for the actions of those who listened. For accomplice liability more than speech was required. It was necessary to show a closer nexus between the speaker and a listener who burned or killed.

Section 157b was added so that in circumstances such as prevailed in Detroit in the 1967 civil disturbance (riot or unlawful assembly) a person who "incited, induced or exhorted" other persons to actually commit a life-endangering offense would be subject to criminal responsibility as an accomplice and, therefore, subject to the same penalty as the person who committed the offense without regard to whether there was any further nexus or concert of action between the speaker and the person who committed the offense. We

28.979, which is codified in the Code of Criminal Procedure. It provides that one who "procures, counsels, aids, or abets" in the commission of a crime may be tried, and upon conviction punished, as if he had directly committed the offense. The main thrust of this statute is to eliminate the ancient procedural distinctions among principals in the first degree, principals in the second degree, accessories before the fact, and accessories after the fact. See *People v Palmer,* 392 Mich 370, 377-378; 220 NW2d 393 (1974); *People v Smith,* 271 Mich 553, 557-562; 260 NW 911 (1935); *Meister v People,* 31 Mich 99, 110-111 (1875); LaFave & Scott, Criminal Law, § 63, pp 495-501.

believe that the word "exhort" was added to make clear that the kind of cause and effect relationship generally required for accomplice liability was not required in the civil disturbance or riot situation. A general incitement, inducement, or exhortation which, in fact, resulted in the commission of life-endangering offenses would subject the offender to the severe penalties prescribed by § 157b.

Any other construction not only places Michigan beyond the pale in terms of the severity of penalty that can be imposed for solicitation, but is not consonant with the other legislation adopted at the time. The penalty for urging the commission of acts of unlawful force or violence in a riot is no more than ten years while under the construction in the lead opinion of § 157b the penalty for urging someone to commit a life-endangering felony *without the added danger of a riot* may be up to life imprisonment and even, it has been claimed, mandatory, non-parolable life imprisonment (where the offense solicited is murder).

We would not construe § 157b to be a solicitation statute but a special kind of accomplice statute designed to fill in the gap perceived following the 1967 riots in the reach of accomplice liability.

## II

Complicity and solicitation are different. While the conduct in both cases can be similar—the encouragement of crime—the basis of responsibility and the appropriate punishment have traditionally been different.

One who assists in the commission of a crime is an accomplice, and encouragement, at least in the context of an adequate nexus between the request and the act, has been considered sufficient assis-

tance to make one an accomplice.[17] Accomplices generally are punished as severely as the principal, on the premise that when a crime has been committed, those who aid in its commission should be punished like the principal.[18] If the principal does not succeed in committing the crime, the accomplice, although he rendered the same aid, is an accomplice only to the attempt,[19] which carries a lighter penalty.[20]

Encouragement, where it amounts to no more than asking or urging another to commit a crime, constitutes the common-law offense of solicitation, a misdemeanor at common law.[21] Solicitation focuses solely on the conduct of the solicitor. Criminal responsibility does not depend upon subsequent events; it is unimportant whether the person solicited actually commits the crime, is incited to commit the crime but does not complete it, or is not influenced at all. Solicitation remains a common-law offense in this state, and the maximum penalty is five years imprisonment.[22]

The legislative history of § 157b shows that it was not intended to cover solicitation. A simultaneously passed riot statute that in terms covers simple urgings to commit crime provides lower penalties for speeches intended to incite a riot.[23] Further, the history of § 157b indicates that the

---

[17] *People v Chapman,* 62 Mich 280; 28 NW 896 (1886); see LaFave & Scott, fn 16 *supra,* § 64, pp 502-503. See fn 16 concerning accomplice liability generally.

[18] See Williams, Criminal Law: The General Part § 137 (1961).

[19] See Model Penal Code § 5.01(3), commentary.

[20] MCL 750.92; MSA 28.287.

[21] See *People v Hammond,* 132 Mich 422; 93 NW 1084 (1903); *Rex v Higgins,* 102 Eng Rep 269 (1801); Anno: 35 ALR 961 (1925).

[22] MCL 750.505; MSA 28.773.

[23] See fn 14.

Senate intended the act to apply when the solic-
ited crime was committed, and the House appears
to have acquiesced in the Senate bill on the under-
standing that the statute punished those encourag-
ing commission of a crime when the crime was
committed.

### A

The same day that § 157b was enacted, the
Legislature enacted a revision of the riot statute
making it unlawful for a person intending to cause
or to aid or abet the institution or maintenance of
a riot to do an act or engage in conduct that
"*urges* other persons to commit acts of unlawful
force or violence, or the unlawful burning or de-
stroying of property, or the unlawful interference
with a police officer".[24] (Emphasis supplied.)

The penalty under the riot act, for advocating
the same crimes described in § 157b, is set at a
maximum of ten years.[25] Section 157b allows a
higher penalty, equal to the penalty for the violent
crime "incited, induced or exhorted". The lead
opinion's construction of § 157b, in combination
with the language of the riot act, would mean that
the Legislature, in passing these two acts on the
same day, decided that advocacy of violent crime
requires a penalty equivalent to the penalty for

[24] See fn 14.

[25] See fn 14.

Advocacy of criminal acts is more dangerous to society when it may
cause a riot. Courts have long recognized the need for extraordinary
police measures in riot situations, because speeches made in a volatile
atmosphere can trigger widespread violence and disorder. *United
States v Williams,* 372 F Supp 65, 66 (D SD, 1974); *Smith v United
States,* 330 F Supp 867, 870 (ED Mich, 1971); see also MCL 750.527;
MSA 28.795. The Model Penal Code carefully limits the circumstances
justifying the use of deadly force in law enforcement, but then makes
a blanket exception for riot situations. Model Penal Code § 3.07.

the crime called for, *unless* the advocacy was with intent to incite a riot, in which case a *lesser* penalty of only ten years is justified.

## B

The Senate bill that became § 157b was, throughout the enactment process, addressed to accomplices—those successfully encouraging another to commit violent crime.

Three bills that dealt with encouragement of crime were introduced in the Senate within 11 days of each other in 1968. Essentially the same group of senators sponsored each of the three bills.[26] Senate Bill No. 846, which became the riot act already discussed, provided:

"Sec. 2. It is unlawful and constitutes incitement to riot for a person or persons, intending to cause a riot or unlawful mob violence, to do an act or engage in conduct that urges other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer, peace officer or fireman in the lawful performance of his duty.

---

[26] Senate Bill No. 846 was introduced on January 29, 1968, by Senators Fleming, Kuhn, Lodge, VanderLaan, Richardson, DeMaso, O'Brien, Hungerford, Schweigert, Zaagman, Bouwsma, Rozycki, Dzendzel, Lane, Lockwood, Youngblood, McCauley, Mack, Stamm, Beebe, Toepp, Novak, Faust, Bursley, Zollar, Bowman, Gray, and Huber. 1968 Senate Journal 85.

Senate Bill No. 927 was introduced on February 8, 1968, by Senators Fleming, Dzendzel, Rozycki, Kuhn, Beebe, Toepp, Stamm, VanderLaan, Bouwsma, Zaagman, Lockwood, Richardson, Lodge, Huber, Schweigert, Zollar, Rockwell, O'Brien, and DeMaso. 1968 Senate Journal 170.

Senate Bill No. 928 was introduced on February 8, 1968, by Senators Fleming, Dzendzel, Rozycki, Kuhn, Beebe, Toepp, Stamm, VanderLaan, Bouwsma, Zaagman, Lockwood, Richardson, Lodge, Huber, Schweigert, Zollar, Rockwell, O'Brien, and DeMaso. 1968 Senate Journal 170.

\* \* \*

"Sec. 4. (1) A violation of sections 1 or 2 is a felony, punishable by not less than 2 nor more than 10 years in prison or a fine of not more than $10,000.00, or both."

Senate Bill No. 927, which became § 157b, provided:

"Any person who incites or exhorts any other person to burn unlawfully any property, to kill, to wound or to assault any persons, or to do any other act which is a felony, or which endangers or is likely to endanger the life or property of any person, or who aids and abets in any such inciting or exhorting, is guilty of a felony punishable by imprisonment in the state prison for not less than 5 nor more than 20 years."

Senate Bill No. 928, which was not enacted into law,[27] provided:

"Any person who incites or solicits another person to loot or commit an act of larceny or burglary is guilty of a felony punishable by imprisonment in the state prison for not more than 10 years or by a fine of not more than $10,000.00, or both."

The Senate Judiciary Committee amended Senate Bill No. 927 to provide that anyone who "induced" another "to murder" would be subject to life imprisonment.[28] (This suggests that at least as to murder § 157b does not apply unless a murder

[27] Senate Bill No. 928, as amended, was passed by the Senate. 1968 Senate Journal 388. In the House, the Committee on Judiciary recommended a substitute bill. 1968 House Journal 2028. Rep. Cooper moved that the bill be re-referred to the Committee on Judiciary, and the House agreed. 1968 House Journal 2645. The same bill subsequently was proposed by Rep. Cooper as a substitute for Senate Bill No. 927, and was passed as amended by the House.

[28] 1968 Senate Journal 213.

is induced.) Following this amendment, the bill's penalty provision read "imprisonment in the state prison for life or any term of years".

The Senate adopted two floor amendments, both proposed by Senator Fleming, who was a sponsor of the bill. First, the clause "to do any act which would constitute a felony or circuit court misdemeanor that may endanger or be likely to endanger the life *or property* of any person" (emphasis supplied) was amended to delete "or property". The second amendment was to make the penalty equal to that for the crime incited, induced, or exhorted.[29] The penalty in Senate Bill No. 928 was similarly amended four days later.[30]

## C

When the bills reached the House, a substitute bill was passed. The House substitute was addressed to solicitations—encouragements to commit a crime regardless of whether the crime was in fact committed. The penalties were considerably lower than those in the Senate. One who urged another to commit first-degree murder could be imprisoned for as long as 20 years; one who urged another to commit a crime punishable by 5 years to life in prison could be imprisoned for as long as 5 years; and one who urged commission of a lesser crime was guilty of a misdemeanor, punishable for as long as 2 years in prison.[31]

---

[29] 1968 Senate Journal 355.

[30] 1968 Senate Journal 376.

[31] "(1) Any person who, with the intent to cause another to engage in conduct constituting a crime, commands or solicits such other person to engage in that conduct, when such command or solicitation is given under circumstances which constitute a clear and present danger that such crime will be committed, is guilty of the crime of criminal solicitation.

"(2) It is no defense to a prosecution under this section that the person solicited or commanded to engage in conduct constituting a crime could not be guilty of such offense because of:

The Senate did not agree to the House bill.[32] The conference committee recommended passage of the Senate version,[33] and both houses agreed.[34]

The Senate's objection to the House bill appears to have been that it was a solicitation statute and did not provide adequately for what the Senate bill covered, successful encouragements to commit crime. The apparent agreement of the conference committee was to adopt a bill imposing accomplice responsibility for successful encouragements to commit crime.[35]

"(A) Criminal irresponsibility or other legal incapacity or exemption;

"(B) Unawareness of the criminal nature of the conduct in question or of the defendant's criminal purpose; or

"(C) Any other factor precluding the mental state sufficient for the commission of the crime in question.

"(3) It is no defense to a prosecution under this section that the defendant belongs to a class of persons who are legally incapable in an individual capacity of committing the offense that the defendant commanded or solicited another to commit.

"(4) Any person guilty of criminal solicitation shall be punished as follows:

"(A) If the offense solicited is first degree murder, the person convicted of such solicitation shall be guilty of a felony punishable by imprisonment in the state prison not more than 20 years, or by a fine of not more than $2,500.00.

"(B) If the offense solicited is punishable by imprisonment in the state prison for life, or for 5 years or more, the person convicted of such solicitation shall be guilty of a felony punishable by imprisonment in the state prison not more than 5 years, or by a fine of not more than $2,500.00.

"(C) If the offense solicited is punishable by imprisonment in the state prison for a term less than 5 years, or imprisonment in the county jail or by fine, the offender convicted of such solicitation shall be guilty of a misdemeanor, punishable by imprisonment in the state prison or reformatory not more than 2 years or in any county jail not more than 1 year or by a fine not to exceed $1,000.00."

1968 Senate Journal 1513-1515. This bill follows the solicitation section, § 1010, of the proposed Michigan Second Revised Criminal Code. The renunciation defense in § 1010 was removed from the House substitute by a floor amendment. 1968 House Journal 2594.

[32] 1968 Senate Journal 1632.

[33] 1968 Senate Journal 1808-1809.

[34] 1968 House Journal 3193; 1968 Senate Journal 1809.

[35] The Senate adopted the Conference Committee reports on both

## D

Section 157b appears to have been intended to resolve a problem of establishing accomplice liability that arose following the 1967 civil disturbances in Detroit. Some persons had contributed to the disturbances by making speeches urging violence and disorder, including arson and other dangerous crimes. Although these speakers may have been responsible for crimes inspired by their speeches, a prosecutor would have difficulty in specifying the crime the speaker had committed.

Successful prosecution of such a speaker as an accomplice to the crimes he encouraged may have been doubtful. An accomplice must have the *mens rea* requisite to the commission of the crime itself. One who had merely encouraged arson in general, to no specific person and with no specific property in mind, might not be considered by a judge or a jury to have the *mens rea* necessary to be found an accomplice to a particular act of arson. The prosecutor may have been reluctant to charge speakers as accomplices. He could prosecute them for the common-law offenses of solicitation and incitement to riot, which carry a maximum penalty of five years.

Senate Bill No. 846, which became the riot act, codified the common-law crimes of riot and incitement to riot, and increased the maximum penalties to ten years. Senate Bills Nos. 927 and 928 were also addressed to the speechmakers. In pass-

bills on June 6, 1968. 1968 Senate Journal 1807-1808. The House adopted the Conference Committee reports on both bills on June 25, 1968. 1968 House Journal 3192-3193. The Governor signed both bills on July 1, 1968. 1968 Senate Journal 2029-2030.

One might object that if § 157b is construed as an accomplice statute, it is redundant because MCL 767.39; MSA 28.979 (see fn 16) already makes accomplices punishable as principals. That statute, however, eliminates common-law distinctions in charging accessories at common law. See fn 16 *supra*.

ing § 157b, the Legislature did not intend to punish speakers for urging criminal conduct—the riot act dealt with that problem—but instead provided a means to hold speakers in a riot responsible for the crimes which their oratory brought about.

## III

One could nevertheless argue that the statutory language seems to cover both complicity and solicitation. This construction of the statute would make principals, accomplices, and those who unsuccessfully urge the commission of a crime subject to the same penalties. Such a treatment of solicitation, however, would be sharply at variance with the common law and the treatment of solicitation in every other jurisdiction. In short, the proposed construction of § 157b would work a drastic and heavy-handed change in the criminal law.

## A

Common-law solicitation includes the invitation to commit any felony, and at least some misdemeanors.[36] Under § 157b, only encouragements to felonies or misdemeanors that are "dangerous to life" would subject the offender to liability. The proposed construction of § 157b would leave importuning the commission of crimes that are not "dangerous to life" subject to the penalty for common-law solicitation, a maximum of five years.

This narrowing of the range of crimes urged, together with the higher penalty, might be construed as an intentional, coherent deviation from the common law: urgings to commit crimes dangerous to life should be punished more severely

---

[36] LaFave & Scott, fn 16 supra, p 415.

than urgings to commit other crimes. However, the Senate's parallel amendment of the penalty provision of Senate Bill No. 928, which concerned larceny and burglary,[37] does not support such a reading.[38]

## B

The proposed construction of § 157b might make one who advocated or urged murder automatically

[37] 1968 Senate Journal 376; see text and note at fn 30 *supra*. Although Senate Bill No. 928 was not enacted into law, the Senate did pass the bill as amended. See fn 27 *supra*.

[38] Solicitation is a crime at common law for two reasons. First, the solicitor has displayed a criminal disposition, and his culpability should not depend upon the fortuity of whether or not the solicited crime ultimately was committed. Second, the populace should not be exposed to entreaties to commit crime.

Neither of those rationales for the crime of solicitation support a construction of § 157b that would treat urgings to commit crimes dangerous to life differently from urgings to commit other crimes. Some nonviolent felonies are punished as severely as the "dangerous" felonies described in § 157b. For example, the maximum penalty for embezzlement of over $100 is ten years, MCL 750.174; MSA 28.371, as is the maximum penalty for arson of a commercial building, MCL 750.73; MSA 28.268. One would not expect the Legislature to equate the penalties for these two crimes, one dangerous to life and the other not, but then to set different penalties for solicitations of the two crimes.

One might argue that urgings to commit dangerous felonies are more culpable because they have a greater probability of success. Crimes of violence need only arouse emotion to put them in motion, while nonviolent crimes require calm preparation and calculation. Thus, one might argue, urgings to commit crimes of violence should be punished more severely than urgings to commit other crimes.

There are two responses to this argument. First, that is not what the Legislature has done in § 157b. That section does not cover urgings to commit crimes of aroused emotion, but urgings to commit crimes that are dangerous to life. There are many crimes dangerous to life, such as the arson requested by Shafou, that require planning and preparation. There are also crimes of aroused emotion that are not dangerous to life, such as the malicious destruction of property.

More importantly, the probability of success of the urging is irrelevant to solicitation. If the solicitation is in fact successful, the solicitor will ordinarily have become an accomplice and may accordingly be punished as if he had committed the crime. Thus one would not expect that the Legislature would see a need to distinguish among forms of solicitation on the basis of the likelihood of their success.

subject to a mandatory sentence of life imprisonment without parole. It is difficult to believe that the Legislature intended that mere words that persuaded no one, much less caused them to act, should call for the severest punishment.[39]

If Shafou's arsonist had gone ahead with the scheme to burn down the store after Shafou had tried to call the whole thing off, but the arsonist had been caught by the police before he could set the fire, Shafou would be punishable as one guilty of arson while the arsonist would be guilty only of attempted arson, which carries a lesser penalty.[40]

If a person urged to commit a murder was persuaded to do so and fired a shot gravely wounding the victim who nevertheless survived, he could only be convicted of assault with intent to commit murder, but the speaker could be sentenced for murder (possibly for first-degree murder).

C

No other state treats simple urgings to commit crime as harshly as the proposed construction of § 157b. Sixteen states[41] have adopted solicitation

[39] MCL 750.316; MSA 28.548. MCL 769.9; MSA 28.1081. *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976).

[40] The maximum penalty for arson of real property is 10 years. MCL 750.73; MSA 28.268. If the arsonist had gone so far in preparing to burn the building as to distribute inflammable material, the arsonist would be punishable by up to 4 years imprisonment. MCL 750.77; MSA 28.272. MCL 750.503; MSA 28.771. If the arsonist were stopped short of that stage, he could be imprisoned for not more than 5 years. MCL 750.92(2); MSA 28.287(2).

[41] See Ala Code § 13A-4-1; Alaska Stat § 11.31.110; Ariz Rev Stat Ann §§ 13-1002, 13-1005; Ark Stat Ann §§ 41-705, 41-706; Colo Rev Stat §§ 18-2-101, 18-2-301; Fla Stat § 777.04; Hawaii Rev Stat §§ 705-510, 705-512, 705-530; Ill Ann Stat ch 38, §§ 8-1, 8-4 (however, Model Penal Code defense of withdrawal not permitted; cf. *People v Brown*, 90 Ill App 3d 742; 414 NE2d 475 [1980] [abandonment not a defense to attempt]); Ky Rev Stat §§ 506.030, 506.060; NH Rev Stat Ann

statutes based on the Model Penal Code.[42] Under the Model Penal Code, the crime solicited need not be committed. The penalty for solicitation is the same as that for the crime invited except that a solicitation to commit a felony of the first degree is

---

§ 629:2; NM Stat Ann § 30-28-3; NY Penal Law §§ 40.10, 100.00-100.20; ND Cent Code § 12.1-06-03; Or Rev Stat §§ 161.435, 161.440; Pa Stat Ann tit 18, §§ 902, 905; Tex Penal Code Ann tit 4, §§ 15.03, 15.04.

The Model Penal Code, promulgated in 1962 (first drafted in 1953), reduced the penalty for solicitation from the penalty for the felony solicited only for solicitation of felonies of the first degree. See Model Penal Code § 5.05. However, 14 of the 16 states which follow the code in other respects have since mitigated the harshness of this rule and reduced the penalties for *all* solicitation offenses from those of the offenses solicited. See Ala Code § 13A-4-1 (all penalties reduced by one step); Alaska Stat § 11.31.110 (all penalties reduced by one step); Ariz Rev Stat Ann § 13-1002 (all reduced by two steps); Ark Stat Ann §§ 41-705, 41-706 (all reduced by one step); Colo Rev Stat §§ 18-2-101, 18-2-301 (virtually all reduced by one step); Fla Stat § 777.04 (all reduced by one step); Hawaii Rev Stat § 705-512 & Commentary (all reduced by one step); Ill Ann Stat ch 38, § 8-4 (all reduced by one step); Ky Rev Stat § 506.030 (all reduced by one step); NM Stat Ann § 30-28-3 (all reduced by one step); NY Penal Law §§ 100.u0-100.20 (all reduced by one, two, or three steps); ND Cent Code § 12.1-06-03 (all reduced by one step); Or Rev Stat § 161.435 (all reduced by one step); Tex Penal Code Ann tit 4, § 15.03 (all reduced by one step).

Two states retain the code approach of reducing only the penalties for solicitation of murder and of felonies of the first degree. See NH Rev Stat Ann § 629:2 (reducing only the penalty for solicitation of murder); Pa Stat Ann tit 18, § 902 (reducing only the penalties for solicitation of murder and of first-degree felonies).

[42] "§ 5.02. Criminal Solicitation

"(1) Definition of Solicitation. A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

"(2) Uncommunicated Solicitation. It is immaterial under Subsection (1) of this Section that the actor fails to communicate with the person he solicits to commit a crime if his conduct was designed to effect such communication.

"(3) Renunciation of Criminal Purpose. It is an affirmative defense that the actor, after soliciting another person to commit a crime, persuaded him not to do so or otherwise prevented the commission of the crime, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

a felony of the second degree.[43] There is, however, a defense of withdrawal. This is a coherent treatment of solicitation, punishing solicitors as harshly as those solicited when there is no withdrawal and the offense solicited is or would have been committed. The punishment does not depend on the fortuity of subsequent events, such as whether the solicitee was actually persuaded, or committed the crime, but because the Model Penal Code concentrates on the criminal disposition of the solicitor, one who subsequently repents and disavows the request escapes liability altogether. Moreover, the Model Penal Code provides that the penalty for solicitations of first-degree felonies, which are the most serious crimes, shall be reduced to the penalty for second-degree felonies so that the maximum sentence for solicitation under the Model Penal Code would be ten years and the minimum sentence cannot exceed three years.[44]

The treatment of solicitation in other states is also far less harsh than the proposed construction of § 157b. Common-law solicitation, which seems to be the rule in 23 states,[45] is a misdemeanor. Ten states have solicitation statutes not based on the Model Penal Code, and none of these states imposes a penalty greater than ten years.[46] Only

---

[43] Model Penal Code § 5.05.

[44] Model Penal Code § 6.06.

[45] We could find no statute on solicitation in the criminal codes of the following 23 states: District of Columbia, Georgia, Idaho, Indiana, Kansas, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Utah, Washington, West Virginia, and Wyoming.

[46] Cal Penal Code § 653f (6-year maximum for solicitation of a felony); Conn Gen Stat § 53a-179a (10-year maximum); Del Code Ann tit 11, §§ 501-503, 541 (10-year maximum); Iowa Code §§ 705.1-705.2 (5-year maximum); La Rev Stat Ann § 14:28 (2-year maximum); Nev Rev Stat § 199.500 ("gross misdemeanor" if solicitation of murder, kidnapping, or arson); Tenn Code Ann §§ 39-1-401 to 39-1-404 (punished as

Montana has a statute resembling the proposed construction of § 157b.[47] Montana's statute says that the punishment for one convicted of solicitation *may never exceed* the penalty for the crime solicited; it does not make life imprisonment without parole mandatory for one who encourages murder.

## IV

The maximum penalty for burning a building other than a dwelling house is ten years. Shafou was sentenced to five years probation, the first six months to be served in the Detroit House of Correction, and fined $1,000. If Shafou had been charged with the common-law offense of solicitation, he could have been punished as severely but no more so.[48]

The issues here presented are of considerable importance in a number of cases, held in abeyance pending the disposition of this case, where the defendants were charged with and convicted under § 157b of soliciting the commission of life-sentence offenses. It would be preferable if the constructional issue were reviewed in such a context because then the potential enormity of the penal provisions of § 157b, construed as a solicitation statute, would be more readily apparent.

We would affirm the Court of Appeals.

RYAN, J., concurred with LEVIN, J.

---

an attempt to commit the felony solicited); Vt Stat Ann tit 13, § 7 (5-year maximum); Va Code § 18.2-29 (5-year maximum); Wis Stat § 939.30 (10-year maximum).

[47] Mont Code Ann § 45-4-101.

[48] See fn 1.

Kavanagh, J. The defendant was convicted by a jury of inciting, inducing, or exhorting another person to unlawfully burn property in violation of MCL 750.157b; MSA 28.354(2). The statute provides:

"Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted."

The Court of Appeals reversed the defendant's conviction in an unpublished per curiam opinion on February 22, 1979. That Court held (1) an overt act on the part of the person sought to be incited, induced, or exhorted is not required for the defendant to be in violation of the statute, and (2) that it was reversible error to deny the defendant's request to instruct the jury regarding the evidence of withdrawal or abandonment of the inciting, inducing, or exhorting.

On appeal to our Court three issues are raised: (1) is withdrawal or abandonment a defense to the crime of inciting, inducing, or exhorting another to unlawfully burn property under MCL 750.157b; MSA 28.354(2); (2) was it reversible error for the trial court to refuse to give an instruction on attempt; and (3) does MCL 750.157b; MSA 28.354(2) require proof of an overt act or that the other person was incited, induced, or exhorted? I would answer the last two questions in the affirmative and not reach the first.

There is little dispute about the facts in this case. Mr. Hazim Saeegh testified that, while he was working with the police as an informant in exchange for immunity from prosecution and dismissal of one of several indictments, the defendant approached him about burning a competitor's store. Mr. Saeegh told the defendant it would cost $1,000, then reported the conversation to the police. The informant was told to stall the defendant so no one else would be hired. The informant subsequently telephoned the defendant on several occasions. These calls were taped by the police and transcripts of the conversations were admitted as evidence at trial.

The defendant testified that the informant approached him about burning the store. The defendant first declined and then agreed.

The defendant, his brother, and the informant testified that the day before the fire was to occur, the defendant's brother called the informant and told him to "forget everything about the store".

The defendant argues that under the facts of this case he did not violate MCL 750.157b; MSA 28.354(2) because Mr. Saeegh was cooperating with the police as an informant and was not in any way incited, urged, stirred up, or prevailed upon to commit the arson. The prosecution argues that the person who was solicited need not have been incited, for the crime was complete when the defendant asked the informant to burn the market.

The opinion for reversal treats the statute as a codification of the common-law crime of solicitation and holds that proof of an overt act and that the other person was incited is not required to find one guilty of violating the statute. I disagree.

I am satisfied for two reasons that the Legislature intended that there be some evidence the

person sought to be incited was actually incited before the defendant could be convicted under MCL 750.157b; MSA 28.354(2). This statute was enacted as 1968 PA 308 in July, 1968, apparently in response to the 1967 Detroit riots. It was placed in the conspiracy chapter of the penal code. This indicates to me that interaction among persons was contemplated by the Legislature.

On the same day that 1968 PA 308 was enacted another statute entitled "Inciting to riot" was enacted as 1968 PA 302; MCL 752.542; MSA 28.790(2). This statute was placed in a supplemental chapter of the code on riots and related crimes and provides:

> "It is unlawful and constitutes incitement to riot for a person or persons, *intending to cause or to aid or abet the institution or maintenance of a riot, to do an act or engage in conduct that urges other persons* to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer, peace officer, fireman or a member of the Michigan national guard or any unit of the armed services officially assigned to riot duty in the lawful performance of his duty." (Emphasis added.)

This statute does not require that a person actually be incited before a crime is committed. It is clear from the emphasized language above that all that is required to violate this statute is an intent to cause or to aid or abet the institution or maintenance of a riot and an act that urges other persons to commit the unlawful acts specified. Thus, the gravamen of this crime is the effort to incite a crime.

In contrast, MCL 750.157b; MSA 28.354(2) provides that "[a]ny person who incites, induces or

exhorts any other person to unlawfully burn any property, * * * or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted".

Both acts deal with incitement of crimes and both were passed on the same day, apparently in response to the same social problem. Because the Legislature used different language to define the prohibited conduct, I am convinced that the Legislature intended to prohibit different activity under the different acts.

I would hold that it is the incitement to burn illegally rather than the effort to incite which is the gravamen of the crime prohibited by the statute under which the defendant was convicted. Accordingly, some overt act resulting in actual incitement of the other person must be proved by direct evidence or reasonable inference from circumstantial evidence to establish this crime. The overt act which must be proved to establish this crime need not be the commission of the crime sought to be incited. But until it is proved that the other person *was* incited this statutory crime has not been committed, however vigorous the attempt to incite may have been. Once the incitement has been demonstrated the crime is complete.

Having determined that MCL 750.157b; MSA 28.354(2) requires an actual incitement, I would find that to be an impossibility in this case. The person whom the defendant sought to incite, induce, or exhort was a police informant. The prosecution admits that the informant never intended to burn the market. Therefore, there is no proof of actual incitement and, at most, the defendant is guilty of attempted "inciting, inducing or exhorting" another person to unlawfully burn property.

The trial court erred by refusing to charge the jury on attempt.

Chief Justice FITZGERALD's opinion would hold that there was no request or evidentiary support for an instruction on attempt and finds no error in the trial judge's failure to instruct the jury on attempt. I am convinced that a fair reading of the following excerpt from the record discloses that a request for an instruction on attempt was made.

"*The Court:* Mr. Steele, do you have any objections or additions to the jury charge that you would like the court to give?

"*Mr. Steele [Assistant Prosecuting Attorney]:* I have no objections, I would just suggest the possibility of an instruction on withdraw[al], since that was brought both in argument before the jury and testimony.

"*The Court:* Well, I don't know if there's any particular instruction, I can indicate so if you want me to, that Mr. Shafou had indicated and the testimony would support that he had withdrawn his request to Mr. Saeegh to have this place burned down, I certainly have no objection to it. I didn't give an instruction on attempt, because I didn't think it was applicable to this case whatsoever.

"*Mr. Steele:* No, I don't either. My point is that if the jury in fact, finds that there was withdrawal, that's not a defense. If the jury finds that defendant did in fact, incite, induce or solicit, so under our conspiracy *[sic]* defense of withdrawal.

"*The Court:* Well, that's correct, there's no questions about that, Mr. Steele.

"Mr. Parzen?

"*Mr. Parzen [defense counsel]:* Well, I think your Honor has covered everything pretty care—quite thoroughly, I think.

"*The Court:* All right. We'll call the jury back in, I will add the statement that if they find that Mr. Saeegh had withdrawn—or, Mr. Shafou had withdrawn his request, that that doesn't constitute a defense inasmuch

as the elements only require that an inducement or incitement be made originally.

"*Mr. Parzen:* Did I understand your Honor to say he was not going to give any intent— *[sic]*

"*The Court:* That is correct because I don't think it pertains to this whatsoever.

"*Mr. Parzen:* I make an—I'll take an exception to that, your Honor.

"*The Court:* Okay. Based upon the testimony, Mr. Parzen, I wouldn't see anything of an attempt at all."

The applicable Michigan law regarding requests for instructions on lesser included offenses is clear.

In *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975), this Court held:

"The duty of the trial judge to instruct on lesser included offenses is determined by the evidence. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971). If evidence has been presented which would support a conviction of a lesser included offense, refusal to give a requested instruction is reversible error. *Id.,* 36. *People v Hamilton,* 76 Mich 212; 42 NW 1131 (1889).

"If the lesser offense is one that is necessarily included within the greater, the evidence will always support the lesser if it supports the greater."

In *People v Chamblis,* 395 Mich 408, 423; 236 NW2d 473 (1975), we set forth the standard for determining whether a lesser included offense instruction should be given upon request.

"In determining whether the instruction should be given, the trial court should consider whether, if the defendant had been originally charged only on the lesser offense, the evidence adduced at trial would have supported a guilty verdict on that charge. If it would have, the requested instruction must be given."

In *People v Lovett,* 396 Mich 101; 238 NW2d 44

(1976), we held in a per curiam opinion that it was reversible error for the trial judge to refuse to instruct on the lesser included offense of attempt, when the evidence showed the completed offense. See also *People v Bradovich,* 305 Mich 329; 9 NW2d 560 (1943).

Chief Justice Fitzgerald's opinion would hold that a violation of MCL 750.157b; MSA 28.354(2) is complete without proof of an overt act or that the other person was incited. It also would hold that there is no evidentiary support for an instruction on attempt, and the trial court did not err by refusing to give the instruction. Such view ignores the rule of *Lovett, supra.* I would hold that even accepting that interpretation of the statute, the defendant was entitled to an instruction on attempt as a cognate included offense.

The remaining issue in this case is whether withdrawal or abandonment is a defense to the crime of inducing, inciting, or exhorting another to unlawfully burn property under MCL 750.157b; MSA 28.354(2). The withdrawal defense is of no avail to the defendant because it is not a defense to a charge of a completed crime. Once the defendant attempted to solicit the police informant, the crime of attempt was complete. There is no need, therefore, to reach the broad issue of whether withdrawal can ever be a defense to an alleged violation of the statute.

This record establishes only an attempt to incite. The defendant should stand convicted of that crime, and the matter be remanded to the trial court for resentencing therefor.

Riley, J., took no part in the decision of this case.