PEOPLE v PLYLER

Docket No. 47501. Submitted October 6, 1980, at Escanaba.—Decided
    March 5, 1981.

Carole S. Plyler was originally charged with inciting first-degree
    murder. Prior to trial, she moved to dismiss the charge on the
    ground of entrapment and to suppress inculpatory statements
    made while in custody and certain tape recordings and films.
    The trial court denied defendant's motion to dismiss but
    granted her motions to suppress. The people thereafter sought
    leave to bring an interlocutory appeal of the trial court's grant
    of defendant's motions before the Court of Appeals, which leave
    was granted. Following appeal, the Court of Appeals affirmed
    the trial court's suppression of the tapes and films and re-
    manded the case to the trial court, 86 Mich App 272 (1978).
    The information was later amended, charging defendant with
    inciting second-degree murder, to which defendant pled guilty
    and was sentenced to prison, Marquette Circuit Court, John E.
    McDonald, J. She appeals, alleging that the trial court erred in
    holding that she was not entitled to raise the defense of
    entrapment and that she was improperly charged and con-
    victed. *Held:*

    1. The reasoning of the trial court in determining that
    defendant had not been entrapped was not in accordance with
    applicable law, but the result was correct. A court should apply
    the objective test of entrapment adopted by the Supreme Court
    which directs a court to look to the conduct of the police to
    determine whether the actions of the police were so reprehensi-
    ble under the circumstances that the court should refuse to
    permit a defendant's conviction to stand as a matter of public
    policy. The record reveals that the police, under the circum-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 143-145.
    40 Am Jur 2d, Homicide § 124.
[2] 21 Am Jur 2d, Criminal Law § 610 *et seq.*
    40 Am Jur 2d, Homicide §§ 27-29.
[3] 40 Am Jur 2d, Homicide § 270.

stances of the case, cannot be construed to have engaged in such conduct.

2. The defendant was properly charged and convicted. Her actions constituted a violation of the applicable statute.

3. The statute under which defendant was charged does not violate the constitutional prohibition against cruel and unusual punishment.

Affirmed.

1. CRIMINAL LAW — ENTRAPMENT — COURTS.

A court, in determining whether a defendant was entrapped, shall look to the conduct of the police to determine whether the actions of the police were so reprehensible under the circumstances that the court should refuse to permit defendant's conviction to stand as a matter of public policy; the court shall not look to a predisposition of the defendant to commit an illegal act.

2. CRIMINAL LAW — INCITEMENT TO MURDER — CONSTITUTIONAL LAW — STATUTES.

The statute proscribing the inducement, incitement, or exhortation of another person to commit life-threatening felonies or misdemeanors does not violate the constitutional prohibition against cruel and unusual punishment (US Const, Am VIII, Const 1963, art 1, § 16, MCL 750.157b; MSA 28.354[2]).

3. CRIMINAL LAW — INCITEMENT TO MURDER — STATUTES.

A violation of the statutory proscription against the inducement, incitement, or exhortation of another person to commit life-threatening felonies or misdemeanors is established upon a showing that such actions on the part of a defendant endangered or were likely to endanger human life (MCL 750.157b; MSA 28.354[2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary L. Walker,* Prosecuting Attorney, for the people.

*Gail Rodwan,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and BASHARA and CYNAR, JJ.

PER CURIAM. Defendant, Carole Plyler, was arrested on March 30, 1977, and charged with inciting first-degree murder, MCL 750.157b; MSA 28.354(2). The prosecutor's application for an interlocutory appeal to this Court was granted on December 22, 1977, and an opinion issued on November 1, 1978, reversing the trial court's suppression of tapes of telephone conversations between defendant and a police informant. On April 19, 1979, defendant pled guilty to the offense of inciting second-degree murder. On June 8, 1979, defendant was sentenced to a prison term of from 2 to 20 years. Defendant now appeals as of right.

At the preliminary examination, which commenced on April 13, 1977, prosecution witness Kenneth Epps, a former classmate of defendant at Northern Michigan University, testified that Ms. Plyler had telephoned him on March 14, 1977, to ask if he would be willing to cause a fatal accident to an unnamed person for $15,000. Epps informed the defendant that he would need time to think about it. Later that day, he reported the conversation to the Marquette City Police. On March 15, 1977, the defendant allegedly telephoned Kenneth Epps a second time. During their conversation, which lasted approximately five or six minutes, Epps advised defendant to forget about the matter they had discussed the previous day, and defendant said, "Okay". Epps reported the telephone call to the police.

After the March 15, 1977, telephone call, defendant never again called Kenneth Epps or initiated any contact with him. Epps testified that, as far as he was concerned, defendant had abandoned the matter. However, on March 27, 1977, Kenneth Epps, in the presence of and at the direction of the police, unsuccessfully attempted to telephone the defendant at her place of employment. On March

28, 1977, Epps did reach defendant by telephone. The call was again placed at the direction of and in the presence of Marquette City Police officers. During this conversation, which was tape-recorded by the police without defendant's knowledge, Epps informed defendant that he had changed his mind and was "willing to take care of this". She agreed to meet him at a local restaurant.

Following this telephone call, Detective Salvatore Sarvello sought and obtained the first of four search warrants issued in this case. The first warrant enabled the police to record the restaurant conversation of March 28. During that conversation, Epps requested advance payment. Epps told defendant that he would not commit the act himself but had another person "who was ready to move". He also asked if she were "for real" in this endeavor because she didn't act like it. Defendant was unwilling to make any payment or to reveal the name of the intended victim. However, she finally indicated that her husband, Gerald Plyler, was the person who was to have the fatal accident. Defendant indicated a reluctance to make advance payment since she said she had paid money on three prior occasions for such an accident and nothing happened. Kenneth Epps persisted in requesting that the defendant deliver money and inferred he would be in trouble if the money was not produced.

It should be noted that the police had information that some type of assault had been made on defendant Plyler's husband on February 27, 1977, by an unknown assailant at the nearby Air Force base where her husband was stationed. In spite of repeated requests by Kenneth Epps for a photograph of the intended victim, no photograph was provided by defendant.

On March 29, 1977, the court issued a second search warrant to record a telephone call Kenneth Epps intended to make to the defendant that day at the direction of the police. After the warrant was issued, Kenneth Epps called defendant, again requesting a down payment and more information about the intended victim.

On March 30, 1977, the court issued a third search warrant to permit the taping of a telephone call to be made by Kenneth Epps to the defendant at the direction of the police. During this conversation, Epps arranged to meet defendant and asked her to bring with her the down payment and all additional information that he had requested. Shortly thereafter, a fourth search warrant was issued to permit the filming and recording of the meeting which was scheduled for 1 p.m. on that date. The meeting with Kenneth Epps took place as arranged, and at 1:10 p.m. Ms. Plyler was placed under arrest.

At no time did Gerald Plyler suffer harm or threat of harm as a result of the discussions between defendant and Kenneth Epps.

Defendant remained incarcerated from the date of her arrest on March 30, 1977, until February 6, 1978, when the amount of her bond was reduced and the bond was posted by her husband, Gerald Plyler.

During the period of defendant's incarceration, numerous motions were filed and argued. Pursuant to its opinion on those motions, the court entered an order on September 21, 1977, denying the defendant's motion to remand for another preliminary examination and further rejected defendant's claim of entrapment. Additionally, in the aforesaid order, the trial court granted the defendant's motions to suppress defendant's in-custody

inculpatory statements, five tape-recorded telephone conversations, and photographs and video tapes of whatever nature, whether secured by search warrants or otherwise.

As noted above, the prosecutor had filed an application in this Court for an interlocutory appeal, and that application was granted on December 22, 1977. An opinion was issued on November 1, 1978. It should be noted that the Court of Appeals opinion excluded defendant's inculpatory statements made while in police custody and reversed the suppression of tapes of telephone calls made between Epps and the defendant pursuant to the search warrants. *People v Plyler,* 86 Mich App 272; 272 NW2d 623 (1978).

The information, as amended on April 19, 1979, reads as follows:

"[O]n or about 15th day of March, 1977 * * * did incite, induce, or exhort another person, to-wit: KENNETH EPPS, to unlawfully burn property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, to-wit: second-degree murder, or aid and abet in such inciting, inducing, or exhorting; Contrary to MCL 750.157b.
"FELONY: Life or any term of years
"INCITING COMMISSION OF OFFENSE".

On April 19, 1979, the defendant was rearraigned and pled guilty to inciting the commission of an offense, second-degree murder. The following exchange took place between the judge and the defendant:

"The Court: Tell me what it was you did.
"The Defendant: The middle part of March, 1977, I

offered Kenneth Epps a sum of money to cause an accident.

"The Court: You offered someone a sum of money to cause an accident?

"The Defendant: Yes.

"The Court: Was it part of your bargain with that person that the accident would be one that would result in the death of your husband.

"The Defendant: Yes sir."

As alluded to above, an entrapment hearing had been held in this case on June 21, 1977. On August 12, 1977, the trial judge ruled that the defendant had not been entrapped. The trial judge reasoned that, since the defendant had pled not guilty, she was not entitled to raise the entrapment defense. Further, the court found that the defendant was not entrapped, since a hypothetical defendant—one not ready and willing to commit the crime charged—would not have accepted the offered opportunity. The reasoning was not in accordance with applicable law, but the result was correct since entrapment was absent in this case.

*People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973), adopts the minority opinion in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). Under the objective test, courts do not look at the predisposition of the defendant to commit an illegal act, but rather to police conduct and to "whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". It surely would have been an error in judgment, even in this day when police enforcement authority is unrealistically hampered, for the police to adopt a wait and see attitude pending the occurrence of a tragedy. The police had knowledge that on a prior

occasion some type of assault had been made on the defendant's husband. Further, the police were put on notice that defendant stated, on prior occasions, that she paid money for such an event to occur and nothing happened. Under the circumstances, looking back, even if opinions might differ as to what direction the police action should have taken, it would be most difficult to understand how police conduct can be construed as scandalous or reprehensible in this case.

As to the remaining issue, we find that the defendant was properly charged and convicted under MCL 750.157b; MSA 28.354(2), of inciting, inducing, or exhorting another to commit the crime of murder. Defendant Plyler was originally charged with inciting first-degree murder and was eventually plea-convicted of inciting second-degree murder.

MCL 750.157b, enacted as 1968 PA 308, provides:

"Any person who incites, induces or exhorts any other person to unlawfully burn any property, to murder, to kill, to wound or to commit an aggravated or felonious assault on any person or to do any act which would constitute a felony or circuit court misdemeanor, that may endanger or be likely to endanger the life of any person, or who aids and abets in any such inciting, inducing or exhorting shall be punished in the same manner as if he had committed the offense, incited, induced or exhorted."

It is argued on behalf of the defense that, during the period when MCL 750.157b; MSA 28.354(2) was considered for enactment the history of the time was one of widespread upheaval. It is beyond dispute that, in the City of Detroit alone, the year 1967 produced one of the longest and most devas-

tating riots in the nation's history. It was with this background, and with a desire to affect conduct occurring in such circumstances, that the Legislature acted the following year.

This statute, one of several enacted in the wake of Detroit's 1967 civil disorders, became effective July 1, 1968, and, like the others passed at the same time, concerned riot-like behavior. *Cf.* MCL 752.541; MSA 28.790(1) (riot), MCL 752.542; MSA 28.790(2) (incitement to riot), MCL 752.543; MSA 28.790(3) (unlawful assembly), and MCL 750.241(3); MSA 28.438(3) (obstructing a fire fighter during a riot).

Perhaps it might better be said that the unlawful happenings of the time alerted the Legislature to enact legislation to fill a void in the existing laws in order to punish persons who incite, induce, or exhort other persons to commit prohibited offenses, whether or not during civil disorders.

MCL 750.157b; MSA 28.354(2) went into effect July 1, 1968. The contentions that the statute was unconstitutional as a form of cruel and unusual punishment or as being unconstitutionally vague were rejected in *People v Chapman,* 80 Mich App 583; 264 NW2d 69 (1978), which rejection was reaffirmed in *People v Richendollar,* 85 Mich App 74; 270 NW2d 530 (1978).

The defendant argues that conduct prohibited by the statute in dispute is not established without proof of an overt act and the actual incitement of a third party. It should be indicated additionally that the preliminary examination establishes that, during the March 28 meeting at the Big Boy Restaurant in Marquette, defendant had stated that she had tampered with the brakes of her husband's van to cause a fatal accident, however, that because her husband was such a good driver,

he got out of it somehow. Also, she had tried to harm him by putting phenobarbital in his drinks. During the meeting on the campus on the 30th, defendant gave Epps a key to the van, a diamond ring, plus information of the times and places where her husband would be for the following week. Defendant mentioned that, if Epps would give her the drugs, she would be willing to help by giving the drugs to her husband and delivering him.

Following a plain reading of the statute and a review of the record, we are convinced that, in this case, it was established that the incitement, inducement, or exhortation endangered or was likely to endanger human life and that nothing further was required to be established. *Cf. People v Formicola,* 407 Mich 293, 301; 284 NW2d 334 (1979).

Affirmed.