**STATE of Iowa, Appellee,**

v.

**Thomas J. ANDERSON, Appellant.**

No. 99–0297.

Supreme Court of Iowa.

Oct. 11, 2000.

David E. Richter and Matthew D. Wilber, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Jeffrey L. Larson, County Attorney,

and Kevin B. Struve, Assistant Attorney General, for appellee.

TERNUS, Justice.

The defendant, Thomas Anderson, was convicted of solicitation of a felony after he accepted cocaine as payment on a client's legal bill. *See* Iowa Code § 705.1 (1997). On appeal he raises numerous constitutional, evidentiary, and instructional errors. We find dispositive, however, his claim that the trial court erred in failing to grant his motion for judgment of acquittal. Because we think there is insufficient evidence to prove the solicitation element of the crime, we reverse the judgment of conviction and remand for dismissal of the charge.

I. *Background Facts and Proceedings.*

Thomas Anderson is a licensed attorney practicing in Harlan, Iowa. He represented an individual by the name of Steve Schuemann in connection with criminal charges that had been filed against Schuemann. Schuemann was also the subject of an ongoing undercover investigation by a special agent for the Iowa Department of Narcotics Enforcement, Todd Jones. On three occasions in 1997, Schuemann sold drugs to Jones. Schuemann also told Jones that his attorney, Anderson, had accepted drugs in payment for legal services. Jones passed this information along to the Shelby County authorities, including the sheriff and the county attorney.

By late 1997, Jones' investigation of drug trafficking was stalled. He talked to the sheriff's department and the county attorney about offering Schuemann a plea bargain in return for Schuemann's agreement to act as a confidential informant in the investigation of two individuals to be identified later by the sheriff. This plan was eventually carried out and Schuemann agreed to assist in an investigation of Anderson.

At Jones' request, Schuemann contacted Anderson and told Anderson that Schuemann had a friend—Jones—who had been stopped in Pottawattamie County for operating a motor vehicle while intoxicated (OWI) and that his friend needed a lawyer. Schuemann also told Anderson that Jones was a drug dealer. In the same conversation, Schuemann made arrangements for an introductory meeting between Anderson and Jones.

On February 24, 1998, Schuemann and Jones met with Anderson in Anderson's office to discuss Jones' alleged OWI charge. Jones testified that this meeting produced no information to support Schuemann's allegations that Anderson had, or would, accept drugs in lieu of a cash payment for legal services. After this meeting, Jones questioned Schuemann about the veracity of Schuemann's earlier statement and Schuemann insisted that he had been truthful.

On March 17, 1998, Jones contacted Schuemann and asked Schuemann to call Anderson to set up a meeting between Jones and Anderson for the following day. Jones asked Schuemann to tell Anderson that Schuemann had assisted Jones in setting up a big drug deal and that, in return for this assistance, Jones was willing to pay some of Schuemann's legal bills with drugs. As requested, Schuemann talked with Anderson and subsequently informed Jones that Anderson was expecting to hear from Jones.

The next day, Jones called Anderson on Jones' car phone and tape-recorded the conversation. The conversation centered on Jones' alleged OWI and what sentence Jones might expect to receive. Toward the end of this conversation, the following exchange occurred:

**Jones:** An' then the other stuff, what he (Schuemann) was talkin' about. All I got about is half a Z on me? You know

what I'm talking about? [1]

**Anderson**: Yeah.

**Jones**: Okay. And um.

**Anderson**: Show me the papers on that, to see what. . . .

**Jones**: Okay.

**Anderson**: What you want to do on it. Jones informed Anderson that he was close to Anderson's office and could stop by right then. When it appeared that a meeting could be arranged immediately, Jones notified law enforcement who set up surveillance of Anderson's law office. Jones then proceeded to Anderson's office for a meeting with Anderson.

Upon Jones' arrival, Anderson escorted Jones to Anderson's private office. The ensuing conversation was taped by Jones. Anderson asked Jones for his papers, and Jones replied that he did not have any. Anderson then placed a call to the Pottawattamie County sheriff's office to determine what charges had been filed against Jones and whether a warrant had been issued, but he was unable to obtain any information. The subsequent conversation between Anderson and Jones focused on the OWI charge until Jones brought up the subject of Schuemann:

> **Jones**: You wanna talk about Steve's situation or not, or?
>
> **Anderson**: Oh, there's nothin' ta' talk about right now.
>
> **Jones**: I just wanna get. What I need ta' do, settle up with him an' just get goin'.
>
> **Anderson**: Okay, um, okay, let's go ahead an' talk about his situation.
>
> **Jones**: Okay.
>
> **Anderson**: There's two things he owes me on.

Anderson then left the room to retrieve Schuemann's file. Upon Anderson's return, Jones shut the door.

Anderson then explained to Jones that he represented Schuemann on a domestic abuse matter and some criminal charges.

Anderson indicated that because his representation of Schuemann on the criminal charges was by court appointment, Schuemann owed him nothing for that work other than $600 for a cash advance made toward Schuemann's bond. Anderson informed Jones that the balance of Schuemann's bill on the domestic abuse matter plus the cash advance was approximately $1360.

At this point, Jones brought up the proposed payment:

> **Jones**: Now, that's no problem. I can take care of that, doesn't worry me, but I don't know what Steve told you about me an' another person, but.
>
> **Anderson**: No he didn't really [unintelligible].
>
> **Jones**: Okay, yeah. 'Cuz I got um, I just, just makes me feel weird, because I, I don't know what the, he did. He talk about any kind of powder stuff to ya? Did he? Okay. I'm pretty sure, did he?
>
> **Anderson**: Yep.
>
> **Jones**: I just thought that, you just, you watch too much t.v. an' it just, it's just weird man. I just. It's just weird. An' like I told him I said that's where I was comin' from.
>
> **Anderson**: Yeah.
>
> **Jones**: It's comin' from down south and I gotta do another one Friday, but how I'll take care of the bill that's not gonna be a problem, but I'm not gonna screw you on what I normally do other people. You know what I'm sayin'?
>
> **Anderson**: Yeah I understand what you're sayin'.
>
> **Jones**: What is, I have, I have a half like I told ya'. I have a half on me. What's that worth? On his bill? Will you, you tell me what you think it's worth an' I'll tell ya' if I think it's fair too. You know I gotta.
>
> **Anderson**: Right, [unintelligible] what it is, you know.

1. Jones testified that "Z" is slang for ounce, in this case meaning half an ounce of cocaine.

At trial, Jones testified that Anderson indicated at this point that he had to look at the cocaine to know how good it was. Jones then stood up and handed a baggie of cocaine to Anderson. Anderson examined the baggie and said that it "looks all right." Although the tape recording of the conversation is partly unintelligible at this point, it appears that Anderson stated that the drugs were worth about "six or seven hundred" dollars. Jones replied that he would "go with five to make it right." After the delivery occurred and the price was determined, the parties talked briefly about the odor of the drugs and Jones' OWI charge.

Jones then left the office and immediately apprised law enforcement of the situation. The police officers entered Anderson's law office and proceeded to Anderson's personal office. Upon seeing the officers approaching, Anderson reached into his pocket, retrieved a baggie of drugs, and handed it to the officers. Anderson was arrested and charged with solicitation of a felony.

The case against Anderson was tried to a jury. At the close of evidence, Anderson filed a motion for judgment of acquittal, claiming there was insufficient evidence that Anderson solicited Jones to commit a felony. The trial court overruled this motion and submitted the case to the jury. The jury returned a guilty verdict, and the present appeal followed.

## II. *Scope of Review.*

■ This court will affirm a trial court's denial of a motion for judgment of acquittal "if there is substantial evidence in the record to support the defendant's conviction." *State v. McPhillips,* 580 N.W.2d 748, 752 (Iowa 1998). "In evaluating whether substantial evidence exists, we view the evidence in a light most favorable to the State." *State v. Westeen,* 591 N.W.2d 203, 206 (Iowa 1999).

## III. *Sufficiency of the Evidence to Prove Solicitation.*

■ The Iowa Code defines the crime of solicitation of a felony as follows:

Any person who *commands, entreats, or otherwise attempts to persuade* another to commit a particular felony or aggravated misdemeanor, with the intent that such act be done and under circumstances which corroborates that intent by clear and convincing evidence, solicits such other to commit that felony or aggravated misdemeanor.

Iowa Code § 705.1 (emphasis added). The particular felony that Anderson was charged with soliciting was delivery of a controlled substance. Anderson claims there is a lack of substantial evidence in the record that he "command[ed], entreat[ed], or otherwise attempt[ed] to persuade" Jones to deliver a controlled substance.

Absent an appropriate meaning in law, this court gives words their plain and ordinary meaning. *See Westeen,* 591 N.W.2d at 208. The common definition of "command" is "to direct authoritatively," to "order." Webster's Third New International Dictionary 455 (unab. ed.1993). "Entreat" is defined as "to ask earnestly," to "beg for," to "persuade." *Id.* at 759. Finally, the word "persuade" means "to induce by argument, entreaty or expostulation into some mental position . . . win over by an appeal to one's reason and feelings . . . plead with." *Id.* at 1687. As these definitions indicate, solicitation is an offense "where the crime is in the asking." *State v. Howard,* 7 Ohio Misc.2d 45, 455 N.E.2d 29, 30 (Mun.Ct.1983).

In the present case, the State does not argue that Anderson commanded or ordered Jones to deliver drugs to Anderson. Nor does the State contend that Anderson asked or begged Jones for the drugs. Rather the State asserts that Anderson "attempted to convince Jones to deliver drugs" by the following actions: (1) agreeing to represent Jones; (2) agreeing to accept drugs as payment for Schuemann's

legal bill; (3) retrieving Schuemann's file and telling Jones what Schuemann owed Anderson; and (4) discussing the quality of the drugs.

In our view, however, none of these actions by Anderson constitutes *persuasion*, as required by the statute. With respect to each act, Anderson was simply responding to requests by Jones. Jones asked Anderson to represent him and Anderson agreed. Jones asked Anderson to accept drugs as payment for Schuemann's legal bill and Anderson eventually acquiesced in this proposition. Jones asked Anderson how much Schuemann owed Anderson and Anderson responded by getting Schuemann's file and ascertaining the balance owed. And finally, Jones asked Anderson how much Anderson thought the drugs were worth, so Anderson examined the drugs and gave Jones his opinion on the value of the drugs.

We have addressed somewhat similar circumstances in the context of the crime of solicitation of prostitution. *See State v. Walker*, 247 N.W.2d 1 (Iowa 1976). In *Walker*, police officers placed a recording device in a hotel room and then called a massage parlor, requesting a female be sent to the room for a nude encounter and a massage. 247 N.W.2d at 1. When the defendant arrived, she was admitted to the room by one of the officers posing as the client. *Id.* A conversation ensued between the officer and the defendant, and, based on this conversation, which is not detailed in the court's opinion, the defendant was charged with the crime of soliciting prostitution. *Id.* Her subsequent conviction was reversed on appeal. *Id.* This court said:

> We have concluded that a fair reading of the record and any interpretation which could be put upon the statements of the defendant as disclosed by the tape falls far short of establishing any solicitation of [the officer] by defendant to

engage with defendant in actual sexual intercourse.

> A fair reading of the record and an unbiased auditing of the tape can lead us to no conclusion other than if there was solicitation to engage in commercial sexual intercourse it proceeded from [the officer] to defendant rather than from defendant to [the officer]. .

> ... At best, the testimony of [the officer] would serve to indicate that what the defendant did was accept [the officer's] importunities to engage with him in sexual intercourse and that he was the one who requested or solicited the activity.

*Id.* at 2. This holding is consistent with the observation of the Tennessee Supreme Court that "[o]ne may not be solicited into soliciting. He is either the solicitor or the solicitee." *State v. Jones*, 598 S.W.2d 209, 221 (Tenn.1980).

We think the record before us shows a situation identical to that in *Walker*. A fair reading of the record, including the tape recording of the parties' meeting, leads this court to the conclusion that if there was solicitation to engage in criminal activity it proceeded from Jones to the defendant, rather than from the defendant to Jones. As in *Walker*, the defendant simply accepted Jones' offer to participate in the criminal activity of delivery of a controlled substance.[2] Because Anderson was solicited to accept the delivery of a controlled substance, Anderson, as the solicitee, cannot also be the solicitor. Under these circumstances, we conclude that Anderson's acquiescence and participation in the commission of the criminal offense is insufficient to establish that Anderson *persuaded* Jones to commit the crime, as the word "persuade" is commonly defined. *See Shannon v. United States*, 311 A.2d 501, 505 (D.C.1973) (holding that the defendant's affirmative response to the undercover officer's request for a sexual act was not a solicitation by the defendant);

---

2. We do not mean to imply that the defendant committed no crime, only that, whatever of- fense he committed, it was not solicitation of a felony.

*State v. Trump*, 381 So.2d 452, 454 (La. 1980) (holding that where police officers initiated the encounter and at the outset solicited the defendant for prostitution, the defendant's eventual quoting of a price did not constitute a solicitation by the defendant); *State v. Jackson*, 381 So.2d 454, 455 (La.1980) (holding that the defendant's action in calling back the informant who had momentarily turned away to leave was not a sufficient break in the informant's solicitation of the defendant to make the defendant the solicitor); *People v. Salazar*, 140 Mich.App. 137, 362 N.W.2d 913, 918 (1985) (holding evidence that defendant merely responded to informant's solicitations could not support a finding that defendant urged or persuaded the informant to commit murder). Therefore, we hold that there was insufficient evidence to support a finding that the defendant "command[ed], entreat[ed], or otherwise attempt[ed] to persuade" Jones to deliver a controlled substance. *See* Iowa Code § 705.1. Accordingly, the district court should have granted Anderson's motion for judgment of acquittal.

### IV. *Conclusion.*

Having determined that there is insufficient evidence to support the defendant's conviction of solicitation of a felony, it is not necessary to address the other alleged errors raised on appeal. We reverse the defendant's conviction and remand this case for entry of judgment of acquittal.

**REVERSED AND REMANDED.**

All justices concur except LARSON, J., who takes no part.