*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL JOSEPH DEBONO,

Defendant-Appellant.

FOR PUBLICATION
March 16, 2023
9:10 a.m.

No. 362041
Wayne Circuit Court
LC No. 21-008204-01-AR

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

HOOD, J.

Defendant, Daniel Joseph DeBono, appeals by leave granted[1] the circuit court's appellate order reversing the district court's dismissal and remanding for the district court to determine whether probable cause existed to bind DeBono over on three charges of assault with a dangerous weapon, MCL 750.82 ("felonious assault"). The circuit court correctly concluded that MCL 750.527, commonly referred to as the "riot act," provides a legal defense at trial instead of immunity. We, therefore, affirm.

## I. BACKGROUND

This case arises out of allegations that DeBono, a Detroit Police Department (DPD) officer, assaulted three photojournalists by firing rubber bullets at them in the early morning hours of May 31, 2020. The complainants are Nicole Hester, a photographer with MLive, Gregory Herald, a freelance photographer, and Matthew Hatcher, another freelance photographer. They were in Detroit the evening of May 30, 2020, covering protests following the murder of George Floyd in Minneapolis. All three were wearing press credentials and carrying cameras and other equipment.

On May 30, 2020, around 10:00 p.m., the Detroit Police Chief declared an unlawful assembly and ordered law enforcement to disperse protesters from Downtown Detroit. This

---

[1] See *People v DeBono*, unpublished order of the Court of Appeals, entered August 18, 2022 (Docket No. 362041).

-1-

included members of the Mobile Field Force (MFF), a crowd control unit, to which DeBono was assigned as a grenadier. The declaration was in response to some of the protesters attacking and throwing objects at police outside of DPD headquarters. At the time of the declaration, the MFF was positioned outside of DPD headquarters. Following the declaration, police began making loudspeaker announcements, instructing people near DPD headquarters to disperse. The announcements were loud enough to be heard over a block away, and police made dozens of repeated announcements to disperse as they moved from DPD headquarters to the center of Downtown. It remains unclear if the announcements were made on or near the location of the alleged assault.

The alleged assault happened around 12:30 a.m. on May 31, 2020, near Woodward and State Street, approximately 0.7 miles from the DPD headquarters. While walking down Woodward, the complainants observed a confrontation between police and a protester. After pausing to observe and potentially take photographs, they were confronted by two other police officers. The complainants testified that they raised their hands and identified themselves as journalists. But within seconds, one of the officers fired at them. Based on a video exhibit published during the preliminary examination, the complainants were approximately 50 to 75 feet away from the officer that fired on them using rubber bullets. The prosecution alleges that DeBono was the officer that opened fire.

DeBono was charged with three counts of felonious assault. The district court held the preliminary examination over four days from July to October 2021. During the preliminary examination, the parties disputed whether MCL 750.527 provided DeBono with immunity from prosecution as a matter of law or an affirmative defense to be asserted at trial. At the end of the preliminary examination, the district court dismissed the case, concluding that DeBono was "exempt from criminal prosecution" under MCL 750.527.

In November 2021, the prosecution appealed to the circuit court, requesting that the circuit court reverse the order of dismissal and remand for the district court to bind over for trial. It argued that the evidence presented at the preliminary examination created a triable fact question on whether DeBono's actions were protected under MCL 750.527. The prosecution conceded that a riot did occur near DPD headquarters hours before the alleged assault, but it argued that the requirements for use of force under MCL 750.527 did not exist at the time and in the location of the alleged assault. Further, the prosecution argued that if MCL 750.527 covered DeBono's conduct it would violate the First Amendment's protections for freedom of the press, to peaceably assemble, and to petition the government.

DeBono argued that the district court properly dismissed the case because MCL 750.527 provides officers with immunity at law, rather than creating an issue for a jury. He argued that the circuit court should not consider the alternative constitutional issue because it was never raised before the district court.

After oral argument and supplemental briefing, the circuit court entered an order reversing the district court's dismissal order and remanding to the district court for continued proceedings. The circuit court concluded that MCL 750.527 provides an affirmative defense at trial, not immunity from prosecution. In doing so, the circuit court relied on statutory language. Specifically, the court observed that unlike other parts of the penal code that confer immunity,

MCL 750.527 never uses the word "immunity." It also relied on the statute's use of the phrase "justified in the law," which it interpreted as creating a fact question for juries. Finally, it relied on persuasive authority interpreting Florida's nearly identical riot act. Because the district court did not make findings on whether there was probable cause to believe that DeBono committed the three charged assaults, the circuit court remanded to the district court to make a such findings. This appeal followed.

## II.  THE RIOT ACT PROVIDES A DEFENSE, NOT IMMUNITY

DeBono argues that the circuit court erred by concluding that MCL 750.527 provides a legal defense at trial instead of immunity as a matter of law. We disagree. The circuit court correctly concluded that the statutory language, particularly the phrase "shall be held guiltless and fully justified in law," provides an affirmative defense, not immunity.

We review questions of law, including issues of statutory interpretation, de novo. *People v Ackah-Essien*, 311 Mich App 13, 21; 874 NW2d 172 (2015).

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. [*People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012) (citation omitted).]

"When an undefined statutory term has been the subject of judicial interpretation, [this Court] presume[s] that the Legislature used the particular term in a manner consistent with the prior construction." *Id*. at 400-401 (citation omitted).

MCL 750.527 provides:

> Death ensuing from efforts to disperse unlawful assemblies or riots—If, by reason of any of the efforts made by any 2 or more of the said magistrates or officers, or by their direction, to disperse such unlawful, riotous or tumultuous assembly, or to seize and secure the persons composing the same, who have refused to disperse though the number remaining may be less than 12, any such person, or any other person there present as spectators or otherwise, shall be killed or wounded, the said magistrates and officers and all persons assisting by their order, or under their direction, *shall be held guiltless and fully justified in law*; and if any of the said magistrates or officers, or any person acting by their order, or under their direction, shall be killed or wounded, all the persons so unlawfully, riotously or tumultuously assembled, and all other persons who, when commanded or required, shall have refused to aid or assist the said magistrates or officers, shall be held answerable therefor.  [Emphasis added.]

The circuit court correctly interpreted MCL 750.527 as providing a defense at trial for three reasons: (1) MCL 750.527 omits the word "immunity," which the legislature typically explicitly

uses to confer immunity; (2) it contains the phrases "held guiltless" and "justified in the law," which implicate an issue for a jury at trial; and (3) other jurisdictions interpreting nearly identical statutes have concluded that the language of the statute provides a defense, not immunity, see *Krickovich v State*, 333 So3d 237 (Fla App, 2022).[2]

First, and most critically, the Michigan Legislature typically uses explicit language to provide immunity as a matter of law. See, e.g., MCL 750.411(4) (providing "immunity" from prosecution for various reporting activities required by MCL 750.411); MCL 750.239(4) ("The department of state police is immune from civil liability for disposing of a firearm in compliance with this section."). MCL 750.527 does not explicitly confer "immunity," but it also does not state that the person cannot be arrested or prosecuted, language the legislature has used in other statutes to confer immunity on certain individuals. See, e.g., MCL 333.26424(a) and (b) (stating that certain individuals are "not subject to arrest, prosecution, or penalty in any manner . . . ."). Even the statute on which DeBono appears to rely specifically provides for "immun[ity] from civil or criminal liability . . . ." See MCL 722.625.[3]

Second, separate from omitting an explicit grant of immunity, MCL 750.527's language appears to implicate fact questions for a jury. Courts use the language of "justification" when analyzing affirmative defenses. See *People v Goree*, 296 Mich App 293, 305; 819 NW2d 82 (2012) ("The trial court's erroneous instruction that defendant's act of felony-firearm could not be justified by self-defense was prejudicial."); *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008) (discussing common law self-defense and stating that, "[g]enerally, the use of deadly force in self-defense is justified if a person 'honestly and reasonably believes that his life is in imminent danger . . . .'") (citation omitted). And our pattern jury instructions use the terms "justified" and references to "guilt." See, e.g. M Crim JI 7.15(1) ("If a person acts in lawful self-defense, that person's actions are *justified* and [he / she] is *not guilty* . . . .") (emphasis added); M Crim JI 7.17(1) ("If a person acts in lawful defense of [his / her] home, that person's actions are *justified* and [he / she] is *not guilty* . . . .") (emphasis added). The phrases "justified in the law" and "held guiltless" in MCL 750.527, therefore, appear to implicate a jury at trial, rather than immunity.

Third, other jurisdictions interpreting nearly identical language have reached this same conclusion. See *Krickovich*, 333 So 3d at 238-240. In holding that MCL 750.527 provided an affirmative defense, rather than immunity, the circuit court relied in part on *State v Krickovich*, a decision of the Florida Court of Appeals, interpreting a nearly identical statute. Like the circuit court, we find *Krickovich* persuasive. There, the petitioner, a deputy sheriff, sought a writ of prohibition to prevent his prosecution for misdemeanor battery charges. *Id*. at 238. The petitioner

---

[2] While nonbinding on this Court, out-of-state cases may be relied on as persuasive authority. See *People v Bell*, 276 Mich App 342, 349; 741 NW2d 57 (2007) ("While we recognize that the out-of-state cases we cited are not binding on this Court, we find their reasoning to be persuasive.").

[3] DeBono compares MCL 750.527 with MCL 722.65, which does not exist. MCL 722.625, however, provides, "A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action."

relied on Florida's equivalent of MCL 750.527. See *id.* at 238-239, citing Fla Stat 870.04 and 870.05. Read together, the relevant sections of the Florida Statutes are nearly identical to MCL 750.527. Fla Stat 870.05 provides:

> If, by reason of the efforts made by any of said officers or by their direction to disperse such assembly, or to seize and secure the persons composing the same, who have refused to disperse, any such person or other person present is killed or wounded, the said officers and all persons acting by their order or under their direction, *shall be held guiltless and fully justified in law*; and if any of said officers or any person acting under or by their direction is killed or wounded, all persons so assembled and all other persons present who when commanded refused to aid and assist said officer shall be held answerable therefor. [Emphasis added.]

The court held that the statute used "language consistent with a defense at trial ('shall be held guiltless and fully justified in law'), not immunity." *Krickovich*, 333 So3d at 239. The court stated that " '[j]ustification' and 'guilt' are trial concepts." *Id*.

We find the *Krickovich* reasoning persuasive. Unlike the court in *Krickovich*, our Supreme Court has not interpreted our state's riot act—even in the civil context. See *Krickovich*, 333 So3d at 239 (citing *Cleveland v City of Miami*, 263 So2d 573 (Fla, 1972) (interpreting Fla Stat 870.05 in the civil context)). Instead, this case presents a matter of first impression. To our knowledge, MCL 750.527 has only been cited in a single case, in nonsubstantive discussion in a dissenting opinion. See *People v Shafou*, 416 Mich 113, 129 n 13, 134 n 25; 330 NW2d 647 (1982) (LEVIN, J., dissenting). Nonetheless, the similarity of MCL 750.527 to the Florida Statute, combined with the omission of the term "immunity," persuades us that the reasoning in *Krickovich* is sound and the circuit court correctly looked to it as persuasive authority.

On the other hand, DeBono's reliance on an advisory opinion from the Kent County Prosecutor is not persuasive for three reasons. First, it is not binding on this Court. Second, the letter appears to explain the exercise of prosecutorial discretion in not charging ostensibly similar conduct by an officer in Kent County, which is an altogether different inquiry. The prosecution has discretion related to whether and which charges it brings against a defendant. *People v Venticinque*, 459 Mich 90, 100; 586 NW2d 732 (1998). Its choice not to bring criminal charges does not necessarily mean that a charge is not viable. See *People v Conat*, 238 Mich App 134, 150; 605 NW2d 49 (1999) Third, contrary to DeBono's argument, the letter does not clearly state that MCL 750.527 provides immunity. Although the letter states that "MCL 750.527 grants a large amount of immunity to those individuals who are involved in breaking up the riot or unlawful assembly," in the very next sentence the letter states that the officer at issue "would have this *defense* available to him." It is, therefore, unclear if the Kent County Prosecutor was stating MCL 750.527 provides immunity, or acknowledging a viable defense at trial.

We are also not persuaded by DeBono's reliance on civil cases analyzing governmental immunity as a question of law in the civil context. Each of the cases DeBono cites involve governmental immunity in the context of civil tort liability, see *Baker v Waste Mgt of Mich, Inc*, 208 Mich App 602, 605; 528 NW2d 835 (1995); *Pierce v Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005), which does not bear on liability from criminal charges.

We agree with the circuit court that MCL 750.527 provides a possible defense rather than immunity from charges. Because we agree with the circuit court on this issue, it is unnecessary for us to address the prosecution's First Amendment argument.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's appellate order reversing the district court's order of dismissal. MCL 750.527 provides a possible defense at trial, not immunity. We remand to the district court for the district court to determine whether there is probable cause that DeBono committed three counts of assault with a dangerous weapon. We take no position on whether DeBono is entitled to a jury instruction on the potential defense under MCL 750.527 because that question is not presently before us. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Sima G. Patel
/s/ Brock A. Swartzle